# NO. 12-12-00381-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SHAMS EMIL MASTERS,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Shams Emil Masters appeals his conviction for murder.  In one issue, Appellant challenges the jury instructions.  We affirm.

## BACKGROUND

Appellant was charged by indictment with murder, a first degree felony.  Appellant pleaded "not guilty," and the case proceeded to a jury trial.   At the conclusion of the trial, the jury found Appellant guilty of murder as charged in the indictment, and assessed his punishment at life imprisonment.   This appeal followed.

## ACCOMPLICE WITNESS INSTRUCTION

In his sole issue on appeal, Appellant contends that two witnesses were accomplices. Consequently, he argues, the trial court erred by failing to sua sponte include an accomplice witness instruction in the jury charge.   Appellant also contends that he was egregiously harmed by the trial court's error, and that this court should reverse the judgment and remand the case for a new trial.

**Standard of Review**

In our review of jury charge error, we must first determine whether error occurred, and if so, whether that error caused sufficient harm to require reversal.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).   The degree of harm necessary for reversal depends on whether the appellant preserved error at trial.  *Id*.   When, as here, the appellant fails to object or states that he has no objection to the charge, we will not reverse unless the record shows "egregious" harm to the appellant.  *Id*. at 743–44 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)); *see also* *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008).

**Applicable Law**

An accomplice is someone "who participates with a defendant before, during, or after the commission of the crime and acts with the requisite culpable mental state."  *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).   An accomplice is also someone who is charged or, under the evidence could have been charged, with the same offense as the defendant or a lesser-included offense.  *Zamora v. State*, No. PD-1395-12, 2013 WL 5729980, at *5 (Tex. Crim. App. Oct. 23, 2013) (not yet released for publication); *see also* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011) (relating to criminal responsibility as a party to the offense).   To be considered an accomplice, the witness "must have engaged in an affirmative act that promote[d] the commission of the offense that the accused committed."  *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) (citing *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)). Evidence must exist connecting the alleged accomplice to the offense as a "blameworthy participant," but "whether the alleged accomplice-witness is actually charged or prosecuted for his participation is irrelevant."  *Cocke*, 201 S.W.3d at 748 (citing *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998)).

One is not an accomplice for "knowing about a crime and failing to disclose it, or even concealing it."  *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (quoting *Blake*, 971 S.W.2d at 454).   Even where the evidence shows that the witness participated in concealing the crime, such evidence is not sufficient to raise the issue of accomplice status.  *Id*.   Merely assisting a murderer in disposing of the murder weapon after the murder does not make one an accomplice as a matter of law.  *Roys v. State*, No. 07-11-00452-CR, 2013 WL 6017439, at *2 (Tex. App.—Amarillo Nov. 8, 2013, no pet. h.) (not yet released for publication).   The "witness must still be susceptible to prosecution for the murder itself by having affirmatively assisted in

2

committing the offense." *Id*. (quoting *Druery*, 225 S.W.3d at 500).

The evidence at trial dictates whether an accomplice as a matter of law or fact instruction is required. *Smith*, 332 S.W.3d at 439 (citing *Cocke*, 201 S.W.3d at 747). A witness is an accomplice as a matter of law if he has been, or could have been, indicted for the same offense or a lesser included offense, or when the evidence clearly shows that the witness could have been so charged. *Cocke*, 201 S.W.3d at 748; *Druery*, 225 S.W.3d at 498. The trial court is required to give the jury an accomplice witness instruction if a witness is an accomplice as a matter of law. *Cocke*, 201 S.W.3d at 748.

If the evidence does not clearly show the witness is an accomplice as a matter of law, or if the parties present conflicting evidence as to whether the witness is an accomplice, the trial court should allow the jury to decide whether the witness is an accomplice as a matter of fact with an instruction defining the term "accomplice." *Druery*, 225 S.W.3d at 498–99; *Cocke*, 201 S.W.3d at 747–48. But when the evidence clearly shows that a witness is not an accomplice, the trial judge is not obliged to instruct the jury on the accomplice witness rule—as a matter of law or fact. *Smith*, 332 S.W.3d at 440; *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987).

## The Evidence

Appellant was convicted of murdering William Young on February 15, 1999, by shooting him with a firearm. He contends that Russell Aaron Tyler was an accomplice witness because after Tyler learned of the investigation in Young's death, he buried a handgun that Appellant borrowed from him. Appellant also argues that Aaron Gene Vaughn was an accomplice witness because Appellant attempted to solicit Vaughn's help in robbing Young of drugs and money, Vaughn drove Appellant to Tyler's home to borrow a gun the day before Young's death, and Vaughn did not immediately divulge what he knew to investigating officers.

*Russell Aaron Tyler*

Tyler testified that he met Appellant in 1998 while living in the same apartment complex in Tyler, Texas. At the time of the murder, he lived in a mobile home in Flint, and owned some firearms, including a 9-millimeter Smith & Wesson handgun that his father had given him. He and his roommate testified that Appellant and Vaughn arrived at their mobile home one night in February 1999. Appellant told Tyler that he was going to the liquor store and asked to borrow a pistol to shoot on the way to the store or out at the lake. Tyler showed Appellant the 9-millimeter handgun and said that he could shoot it. However, he asked Appellant to return the handgun by

3

the next morning and put it under the seat of his truck. He did not know Appellant was borrowing the gun to murder someone. Before daylight the next day, Tyler saw Appellant return to his mobile home, get out of the passenger side of the car, put the handgun on the front seat of his truck, and leave. Tyler said that Vaughn was driving the vehicle.

Tyler testified that after he saw Appellant on the news, he took both of his pistols to his father's house and at that point, he said, his father was "in charge." He described his father as very controlling, very large, and a criminal. He and his father checked the 9-millimeter and noticed that one round was missing. Tyler's father poured peroxide on the handgun and the peroxide "foamed up," meaning that it had been shot. Tyler wiped the pistols down, wrapped them in a towel, and soaked them in motor oil before burying them on his father's property. However, Tyler's roommate admitted that he actually buried the guns at Tyler's father's direction because Tyler was in a plaster cast from his hip to his toes.

Tyler stated that law enforcement officers searched his mobile home shortly after Appellant was arrested. He testified that when he arrived at his mobile home and saw law enforcement, he fled. Afterwards, his father contacted law enforcement, and Tyler's roommate dug up the gun and gave it to the officers. Tyler admitted not contacting law enforcement when he saw that the peroxide "foamed up" on the handgun. At trial, the evidence showed the bullet that killed Young appeared to have been fired from the handgun recovered from Tyler.

*Aaron Gene Vaughn*

Vaughn testified that he had testimonial immunity in this case. He moved into a house in August or September 1998, and Appellant moved in with him around Christmas 1998. Vaughn stated that he and Appellant were using drugs, including crack cocaine. He recalled meeting Young through Appellant in January or early February 1999. According to Vaughn, Young stayed at his and Appellant's house three or four days a week to sell drugs, including crack cocaine. He stated that at that time, all three of them were selling crack cocaine. Vaughn testified that Young was the top of the "food chain," and brought the drugs to the house. He said that Young sold the drugs directly to him, and then he would sell some to others.

Vaughn had a vehicle, a Toyota Camry, but it was not registered or inspected, and he did not have any insurance. Appellant drove Vaughn's vehicle daily, but mostly at night. His other roommate had a black vehicle that he and Appellant also drove. At one point in mid-February 1999, Appellant asked Vaughn if he wanted to help him "jack," or rob, Young for crack cocaine

and money.   Vaughn told him he did not want "anything to do with that."   He did not believe that Appellant and Young were fighting, but stated that they wanted Young to leave their house. He recalled driving Appellant to Tyler's house in his roommate's car on February 15, 1999. Vaughn denied knowing that Appellant was going to get a gun and believed that they were going to Tyler's mobile home for methamphetamine.   He denied ever seeing a gun.

Appellant and Vaughn's other roommate recalled that Appellant begged to borrow her car late that night, but she refused and left for work.   That night, Vaughn, Appellant, and Young were watching wrestling.   Another witness, Dale Linbaugh, stated that he was present in the house that night and testified that Young pulled out a large bag of crack cocaine and some scales.   According to Vaughn and Linbaugh, Appellant and Young left the house together.   Linbaugh stated that over an hour later, Appellant returned eating chicken nuggets even though he did not have any money when he left.   Appellant asked for change to clean the car, stating that he had spilled some ketchup, and left again.   Shortly afterwards, Linbaugh also left the house. Vaughn stated that Appellant returned with a "whole lot of crack," a lot more than normal.   He testified that Appellant told him he did not think Young would be bothering them anymore.   Vaughn said that he drove Appellant to Tyler's mobile home early the next morning.   Linbaugh testified that the next day, he returned to Appellant's house and saw a lot of crack cocaine and the scales.   Vaughn stated that he did not know what happened nor did he want to know.   However, he realized that Appellant had taken his car the night before.

On February 18, 1999, homicide detectives arrived at Vaughn's home.   He remembered the detectives asking him the last time he had seen Young.   After the detectives left, Vaughn asked Appellant if he had anything to do with Young being killed.   Appellant went "berserk," telling him that "[y]ou can't tell anybody.   He's a drifter.   Nobody's going to know.   You can't tell them."   Appellant told him that no one would ever know that he killed Young unless he, Vaughn, said something.   According to his other roommate, Vaughn appeared to be "in shock" when he heard that Young had been killed.

On cross examination, Vaughn stated that Appellant told him he killed Young before the detectives came to his house in February.   He did not inform the detectives because he was trying to protect Appellant and was scared of him.   However, this conflicted with his testimony on direct examination.   Vaughn also failed to inform law enforcement after Appellant was arrested that Appellant told him he killed Young.

5

*Analysis*

The evidence shows that Appellant borrowed a handgun from Tyler that later appeared to have been the weapon that killed Young. Tyler admitted that he loaned the handgun to Appellant. He also admitted that his roommate later buried the handgun on his father's property after he saw Appellant on the news. A person is not an accomplice for loaning and then disposing of a murder weapon after the murder. *See Roys*, 2013 WL 6017439, at *2. There is no evidence that Tyler knew Appellant planned to rob and kill Young or committed an overt act before or after Young's murder that indicated he intended to assist the commission of the offense. Nor does the evidence suggest that Tyler acted with the culpable mental state required for murder. *See id.* Therefore, there is no evidence that Tyler could have been charged with Young's murder or a lesser included offense or that he engaged in an affirmative act that promoted the commission of the murder. *See Zamora*, 2013 WL 5729980, at *5; *Smith*, 332 S.W.3d at 439. Thus, the trial court did not err in failing to instruct the jury on the accomplice witness rule as applied to Tyler.

The evidence also shows that although Vaughn drove Appellant to Tyler's mobile home, Appellant, not Vaughn, borrowed the handgun used to kill Young. Linbaugh testified that Appellant, not Vaughn, was the last person seen with Young while he was still alive. He also stated that when Appellant returned, he was by himself, eating chicken nuggets, and left to clean the car. Appellant and Vaughn's other roommate testified that Appellant, not Vaughn, wanted to borrow her car that night. Vaughn also appeared to be "in shock" after learning of Young's death. None of this evidence shows that Vaughn committed an overt act before or after Young's murder that indicated he intended to assist the commission of the offense.

Vaughn concealed his knowledge that Appellant killed Young. But one is not an accomplice for "knowing about a crime and failing to disclose it, or even concealing it." *See Medina*, 7 S.W.3d at 641. The evidence also shows that Appellant asked Vaughn to help him rob Young of crack cocaine and money before he was killed. Nonetheless, there is no evidence that Vaughn helped Appellant rob Young on the night Appellant and Young left the house together. Linbaugh testified that Appellant, and not Vaughn, left the house with Young the night of the murder. He also testified that Appellant returned to the house alone and borrowed money to clean the car. There is no evidence that Vaughn engaged in an affirmative act that promoted the commission of the murder. *See Zamora*, 2013 WL 5729980, at *5; *Smith*, 332 S.W.3d at 439. Nor does the evidence suggest that Vaughn acted with the culpable mental state required for

6

murder. *See* ***Roys***, 2013 WL 6017439, at *2.   Thus, the trial court did not err in failing to instruct the jury on the accomplice witness rule as applied to Vaughn.

We overrule Appellant's sole issue.


## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the judgment of the trial court.


## SAM GRIFFITH
Justice


Opinion delivered November 26, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)


7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### NOVEMBER 26, 2013

### NO. 12-12-00381-CR

**SHAMS EMIL MASTERS**,
Appellant
V.
**THE STATE OF TEXAS**,
Appellee

Appeal from the 114th Judicial District Court
Of Smith County, Texas. (Tr.Ct.No. 114-0417-12)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*