

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1395-12

**JAIME ARTURO ZAMORA, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FOURTEENTH COURT OF APPEALS
HARRIS COUNTY**

**ALCALA, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Must a trial court *sua sponte* give an accomplice-witness instruction when the evidence raises the issue under the theory that the witness was a party as a co-conspirator? We answer this question affirmatively. Furthermore, we conclude that, when the issue of a trial court's failure to give an accomplice-witness instruction is raised on appeal, a court of appeals should first determine whether a trial court erred by failing to *sua sponte* give that instruction before it considers whether a defendant preserved his complaint for appeal, a

matter that is pertinent to a harm analysis. Because it failed to address the question of charge error in the first instance, we hold that the court of appeals erred by determining that Jaime Arturo Zamora, appellant, forfeited his jury-charge complaint by failing to request an accomplice-witness instruction that was based specifically on a co-conspirator theory of party liability. *See Zamora v. State*, 375 S.W.3d 382, 388-89 (Tex. App.—Houston [14th Dist.] 2012). We, therefore, reverse the judgment of the court of appeals and remand the case to that court so that it may analyze appellant's complaint under the procedural framework of *Almanza v. State*, 686 S.W.2d 157, 160-74 (Tex. Crim. App. 1985) (op. on reh'g) (holding that, in reviewing complaint of charge error, court of appeals must first decide whether jury instruction is erroneous, and, if so, court then determines whether instruction harmed defendant by applying either "some harm" standard if complaint was preserved for appeal, or "egregious harm" standard if complaint was not preserved for appeal).

## I. Background
### A. The Facts

Appellant and his brother, Danny Zamora, had a business selling cocaine and marijuana. His brother ran the business in Mexico, and appellant was in charge of distribution throughout the Houston area. Appellant received the assistance of salesmen in Houston who helped him distribute the drugs. One such salesman was Salinas. The relationship between Salinas and appellant grew bitter in 2005, however, when appellant discovered that Salinas was receiving narcotics directly from Mexico instead of through him.

Around this same period of time, another conflict arose between Salinas and

appellant: Rosales, a lower-level drug dealer, stopped buying contraband from Salinas and started working with appellant and his brother instead. Over time, Rosales and appellant united against Salinas. Appellant told Rosales that Salinas owed him money on a prior narcotics transaction and asked Rosales for help in recovering the money. Rosales looked for someone who could carry out this task, but his efforts at that time were unavailing.

Another event in the summer of 2005 caused the relationship between appellant and Salinas to further sour. Appellant suspected that Salinas stole 17 kilos of cocaine in a burglary of appellant's storehouse. Upset by this incident, appellant no longer wanted merely to recover his money from Salinas, but instead decided to kill him.

The bitter relationship between appellant and Salinas became even more acrid, resulting in mutually violent acts and, ultimately, the deaths of three people over the course of five escalating events reminiscent of the Hatfields and McCoys. First, appellant's brother Danny tried to kill Salinas by shooting him through the neck, but Salinas survived and went into hiding. Second, Salinas tried unsuccessfully to kill Danny by having grenades thrown into a restaurant where he was eating. Third, appellant hired someone to kill Salinas at a Houston restaurant called "Chilos," but another person, Jose Perez, was mistakenly killed instead. Fourth, Salinas had Danny assassinated by gunmen in Mexico. Fifth, appellant finally succeeded in having Salinas killed after appellant and Rosales spotted him at a Houston bar one night and called in hit men to shoot him.

Although many violent events transpired throughout this conflict, appellant's capital

murder conviction in this case stems only from the third event, which resulted in the death of Perez, the complainant in this case. Just before that event, appellant, wanting to kill Salinas, pressured Rosales to find him. Rosales looked for Salinas in places where he might be hiding and reported his results to appellant. Rosales knew generally that appellant had "people ready on standby" to kill Salinas, but he was unaware that appellant had already hired Armando Chapa to kill Salinas. Chapa procured assistance from Steven Torres, who had received a tip that Salinas would be dining at a restaurant called "Chilos" while wearing an "old-style" Houston Astros jersey. Torres recruited two men, Pedro Quintanilla and Michael Belmarez, who went to the restaurant to kidnap Salinas, but while they were waiting outside for Salinas to emerge, Torres called them and told them to "take him out" instead. Torres's men shot and killed the wrong man, Perez, whose fatal misfortune was that he wore an Astros jersey that night as he dined with his family.

**B. Trial and Appellate Court Proceedings**

At his trial for the capital murder of Perez, four of appellant's former associates testified for the State: Belmarez, Chapa, Rosales, and Rogelio Gonzales, appellant's bookkeeper. They described appellant's role in causing the mistaken killing of Perez and their respective roles in appellant's various criminal activities as detailed above.

At the conclusion of the evidence, the trial court instructed the jury that it could convict appellant of capital murder under any of three theories. First, appellant could be convicted for his own conduct if the jury determined that he intentionally caused the death

of Perez by paying or promising to pay another person to kill him. *See* TEX. PENAL CODE §

19.03(a)(3). Second, appellant could be convicted as a direct party if the jury determined that

he, with the intent to promote or assist in the commission of the offense of capital murder,

solicited, encouraged, directed, aided, or attempted to aid Quintanilla and/or Torres and/or

Belmarez in the shooting of Perez for remuneration or promise of remuneration. *See id.* at

§§ 19.03(a)(3); 7.02(a)(2). Third, appellant could be convicted under a conspiracy theory of

party liability if the jury determined that (1) he entered into an agreement with Quintanilla

and/or Torres and/or Belmarez to kidnap Perez; (2) they carried out their kidnapping

conspiracy pursuant to that agreement; (3) while in the course of committing kidnapping, and

in furtherance of the conspiracy, Quintanilla caused the death of Perez; and (4) Perez's death

should have been anticipated as a result of the carrying out of the conspiracy. *See id*. at §§

19.03(a)(2); 7.02(b).[1]

In contrast to the jury instructions that permitted appellant to be convicted under any

of the three theories described above, the accomplice-witness instructions were limited to the

direct-party theory only. *See id*. at § 7.02(a). The jury was instructed that Belmarez was an

accomplice as a matter of law under a direct-party theory. Similarly, the instructions told the

jury to consider whether, under the facts, Chapa and Gonzales were accomplices under a

direct-party theory of culpability. None of the instructions on any of the alleged accomplices

---

[1]     It is unclear why the jury instructions referred to Perez as the intended victim in this case, as opposed to Salinas. It was undisputed at trial that Perez was mistakenly killed in place of Salinas, the actual intended victim. We, however, do not address that matter in this opinion because the issue is not raised in this petition for discretionary review.

mentioned a party-conspirator theory of culpability. And none of the instructions on accomplice witnesses referred to Rosales.

Appellant objected. At the charge conference, appellant orally made a general request for an accomplice-witness instruction for Rosales. He also submitted a proposed written instruction limited to the theory that Rosales was an accomplice under a direct-party theory. The trial court denied the requests, noting that, at the time of the shooting at Chilos, Rosales's involvement was limited to attempting to get money from Salinas. Appellant's attorney disagreed. He argued that, at the time of the shooting at Chilos, appellant wanted Rosales to collect money, kidnap, or kill Salinas.

On direct appeal, appellant argued that the jury should have been given an instruction on whether Rosales was an accomplice as a matter of fact under both a direct-party theory and a party-conspirator theory. As to the direct-party theory, the court of appeals applied *Almanza* in reaching its decision that "there was no error in the charge because there is no evidence of any affirmative act on Rosales's part to assist in Perez's murder." *Zamora*, 375 S.W.3d at 387–89 (citing *Almanza*, 686 S.W.2d at 171). As to the party-conspirator theory, however, the court of appeals did not apply *Almanza*. *Id*. Rather, the court of appeals held that appellant "failed to preserve error on this point" by requesting an accomplice-witness instruction for Rosales based only on the direct-party theory, and it declined to reach the merits of appellant's complaint. *Id*. at 389 ("Under the charge requested, the jury could not reasonably have found that Rosales was an accomplice witness, and appellant did not request

a charge under which it could have done so.").

In his three grounds in this petition for discretionary review, appellant challenges only the ruling of the court of appeals on the party-conspirator theory, contending that his arguments adequately alerted the trial court that he was requesting an accomplice-witness instruction on Rosales under this theory.[2] The State responds that appellant did not request an instruction under a party-conspirator theory, and that, in any event, he would not have been entitled to one because co-conspirators are not accomplices for purposes of the accomplice-witness statute. We do not reach appellant's preservation arguments because, under *Almanza*, the matter of whether an appellant preserved his complaint for appeal becomes pertinent only after a court of appeals has analyzed whether the jury instructions were erroneous. We limit this opinion to address (1) the State's argument that an accomplice-witness instruction is not required under a party-conspirator theory, and (2) the threshold question of whether *Almanza* applies to this case.

**II. Instruction on Accomplice-Witness Rule Under Party-Conspirator Theory**

---

[2] Appellant's three grounds for review in this Court are:

(1) When Texas Penal Code § 7.02(b) language is in the jury charge, must it be specifically referred to when requesting an accomplice witness instruction for a co-conspirator?

(2) The opinion of the Fourteenth Court of Appeals is in conflict with *Nelson v. State*, 297 S.W.3d 424 (Tex. App. Amarillo 2009) as well as with *Paredes v. State*, 129 S.W.3d 530 (Tex. Crim. App. 2004).

(3) Where the Texas Penal Code § 7.02(b) language is in the jury charge, is a request for a standard Art. 38.14 instruction substantially correct under *Stone v. State*, 703 S.W.2d 652 (Tex. Crim. App. 1986)?

In its brief on discretionary review, the State asserts that a witness who is a party to an offense as a co-conspirator under Texas Penal Code Section 7.02(b) "does not comport with the definitions this Court has espoused for the evidence necessary to include an accomplice witness instruction," and, therefore, no accomplice-witness instruction is warranted. The State appears to argue that the definition of an accomplice is limited to one who affirmatively acts to promote the commission of the charged offense and does not include one who acts as a co-conspirator party. *See* TEX. PENAL CODE § 7.02(a), (b).[3] As we will show below, we disagree with the State's position and hold that the definition of an accomplice is broad enough to encompass one who is liable as a co-conspirator party to an offense.

Texas law provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the

---

[3]     Penal Code Section 7.02 provides in relevant part,

(a) A person is criminally responsible for an offense committed by the conduct of another if:
. . .
(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]
. . .
(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE § 7.02.

offense committed[.]" TEX. CODE CRIM. PROC. art. 38.14; *see Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) (testimony of an accomplice must be corroborated by "independent evidence tending to connect the accused with the crime"). The rule has been a part of Texas law since at least 1925, and reflects "a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). Because the rule requires corroboration of accomplice-witness testimony before a conviction can stand, the jury must be instructed accordingly, but the particular instruction that must be given depends on the circumstances of each case. We examine the various types of accomplice-witness instructions to explain why all of these types should be similarly treated under *Almanza*.

**A. Types of Accomplice-Witness Instructions**

A proper accomplice-witness instruction informs the jury either that a witness is an accomplice as a matter of law or that he is an accomplice as a matter of fact. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). The evidence in each case will dictate the type of accomplice-witness instruction that needs to be given, if any. *Id*. A witness is an accomplice as a matter of law when the witness has been charged with the same offense as the defendant or a lesser-included offense, or "when the evidence clearly shows that the witness could have been so charged." *Cocke*, 201 S.W.3d at 747–48; *Druery*, 225 S.W.3d

at 499. For accomplice witnesses as a matter of law, the trial court affirmatively instructs the jury that the witness is an accomplice and that his testimony must be corroborated. *See Druery*, 225 S.W.3d at 498-99. In contrast, when the evidence presented by the parties as to the witness's complicity is conflicting or inconclusive, then the accomplice-witness instruction asks the jury to (1) decide whether the witness is an accomplice as a matter of fact, and (2) apply the corroboration requirement, but only if it has first determined that the witness is an accomplice. *Id*.

Regardless of whether it identifies an accomplice as a matter of law or as a matter of fact, the jury instructions must also explain the definition of an accomplice. The accomplice-witness statute does not define the term, but this Court has repeatedly described an accomplice as someone who, under the evidence, could have been charged with the same or lesser-included offense as that with which the defendant was charged. *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (noting that defendant is "entitled to an accomplice-witness instruction if and only if 'there is sufficient evidence in the record to support a charge against the witness alleged to be an accomplice'") (citing *Smith v. State*, 721 S.W.2d 844, 851 (Tex. Crim. App. 1986)); *Blake*, 971 S.W.2d at 454-55 (noting that Court has "repeatedly stated" that person is an accomplice "if he or she could be prosecuted for the same offense as the defendant, or a lesser included offense"); *Morgan v. State*, 346 S.W.2d 116, 118 (Tex. Crim. App. 1961) (describing test for determining whether witness should be deemed an accomplice as "whether or not there is sufficient evidence in the record to support

a charge against" him).

In applying this broad definition, appellate courts have frequently tailored the definition of an accomplice to the facts of particular cases, most of which involve accomplice witnesses who are or may be direct parties to the offense. *See* TEX. PENAL CODE § 7.02(a)(2) (describing law of parties for direct participant in offense). Implicitly referring to a direct-party theory for accomplices, this Court has described an accomplice as an individual who "participates with a defendant before, during, or after the commission of the crime," "acts with the requisite culpable mental state," and performs an "affirmative act that promotes the commission of the offense with which the defendant is charged." *Cocke*, 201 S.W.3d at 748; *see also Blake*, 971 S.W.2d at 454 (describing accomplice as "a blameworthy participant").

In contrast, this Court has had only one occasion to specifically discuss an accomplice as someone who is or may be a party to the offense as a co-conspirator. *See* TEX. PENAL CODE § 7.02(b) (describing law of parties for co-conspirators). In *Paredes v. State*, this Court stated,

> The trial court's instructions included an instruction on the law of conspiracy under Penal Code § 7.02(b). Appellant argues that [certain named individuals] were accomplices under the meaning of Section 7.02(b) and[,] therefore, he was entitled to the charge on accomplice witnesses. . . . Appellant does not explain how this section would apply to [the named individuals]. To be applicable, there would still need to be evidence that [the named individuals] were conspirators in carrying out one felony when another felony was committed. There is no evidence that the three conspired or attempted to carry out the murders.

*Paredes v. State*, 129 S.W.3d 530, 538–39 (Tex. Crim. App. 2004). In *Paredes*, this Court

determined that the evidence should be examined under a party-conspirator theory, but it did not fully explain why that theory applied. We now explain more fully that the conspiracy theory of party liability applies in the accomplice-witness context because (1) as explained above, an accomplice is a person who may be charged with the same or lesser-included offense as that with which the defendant is charged, and (2) a person may be charged with an offense as a principal, a direct party, or as a co-conspirator. *See* TEX. PENAL CODE §§ 7.01 (person is "criminally responsible" for his own conduct or for "conduct of another for which he is criminally responsible"); 7.02(a)(2) (describing criminal responsibility for direct party); 7.02(b) (describing criminal responsibility for party as co-conspirator).

Although this Court has had only one opportunity to address the precise question of whether testimony from a co-conspirator triggers the requirement for an accomplice-witness instruction, several courts of appeals have adopted the view that it does. *See Williams v. State*, 47 S.W.3d 626, 630 (Tex. App.—Waco 2001, pet ref'd) (holding that accomplice-witness instruction required because witness could have been indicted for charged offense as co-conspirator); *De La Rosa v. State*, 919 S.W.2d 791, 794 (Tex. App.—San Antonio 1996, pet. ref'd) (same); *Riggs v. State*, 744 S.W.2d 140, 142 (Tex. App.—Houston [1st Dist.] 1986) (same), *pet. dism'd, improvidently granted*, 745 S.W.2d 1 (Tex. Crim. App. 1988). In *De La Rosa v. State*, the court of appeals explained that co-conspirator parties to an offense are accomplices for purposes of administering the accomplice-witness rule:

> [I]f the witness and the accused were coconspirators in a conspiracy to commit
> a felony other than the crime with which the accused is charged, the accused

committed the charged offense in furtherance of that conspiracy, and the charged offense was one that should have been anticipated by the witness as a result of carrying out the conspiracy, the witness is an accomplice.

*De La Rosa*, 919 S.W.2d at 794 (citations omitted).

We also observe that Professors Dix and Schmolesky have similarly adopted this view of the interaction between the accomplice-witness rule and the law of parties:

> [I]f the witness is associated with the commission of the crime by the accused in any of the ways described in section 7.02, the witness is criminally responsible for the conduct . . . and thus is a party and an accomplice witness. If, for example, the evidence shows that the witness "solicit[ed], encourage[d], direct[ed], aid[ed], or attempt[ed] to aid" the accused . . . and the witness acted "with intent to promote or assist the commission of the offense," the witness is responsible for the accused's conduct and is an accomplice witness. *The same is the case if the witness and the accused were coconspirators in a conspiracy to commit a felony other than the crime with which the accused is charged*, the accused committed the charged offense in furtherance of that conspiracy, and the charged offense was one that should have been anticipated by the witness as a result of carrying out the conspiracy.

*See* 43A GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 51:75 (3d ed. 2012) (citations omitted, emphasis added).

Having already applied the party-conspirator theory as a basis to decide whether an accomplice-witness instruction was required in *Paredes*, we now expressly agree with those courts of appeals that have held that an accomplice-witness instruction is required when the evidence raises the question of whether a witness is an accomplice under a party-conspirator theory. *See* TEX. CODE CRIM. PROC. art. 38.14; TEX. PENAL CODE § 7.02(b); *Paredes*, 129 S.W.3d at 538-39.

**B. Application of *Almanza* to Accomplice-Witness Instructions**

This Court has definitively held that the procedural framework of *Almanza* applies to accomplice-witness instructions, both as a matter of law and as a matter of fact, based on evidence that the witness was a direct party to the offense. *Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012) (matter of law); *Herron v. State*, 86 S.W.3d 621, 631–32 (Tex. Crim. App. 2002) (matter of law); *Medina*, 7 S.W.3d at 642 (matter of fact). The narrow question before us, therefore, is whether the rule of *Almanza* should somehow be different or inapplicable when it is alleged that a witness is an accomplice as a party to a conspiracy, as compared to a direct party.[4] Our review of the underlying principles of *Almanza* compels us to conclude that all complaints about the trial court's failure to include an accomplice-witness instruction must be analyzed under its procedural framework.

---

[4] We note that a trial court's burden to *sua sponte* instruct the jury on accomplice-witness testimony arises only when the evidence raises the issue. *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008) (noting that, "[i]f the evidence raises an issue" as to a witness's accomplice status, then "the trial court shall instruct the jury" on the accomplice-witness rule); *Medina v. State*, 7 S.W.3d 633, 642 (Tex. Crim. App. 1999) (holding that there was sufficient evidence to "raise[] a fact issue" as to one witness's accomplice status, thereby requiring accomplice-witness instruction for that witness, but finding evidence insufficient to warrant instruction as to other witnesses). Furthermore, the trial court is not required to give an accomplice-witness instruction when the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact. *Cocke v. State*, 201 S.W.3d 744, 748-49 (Tex. Crim. App. 2006) (holding that trial court did not err by failing to give accomplice-witness instruction because "the evidence did not raise the issue"). Mere presence during the commission of the crime does not make one an accomplice, nor is one an accomplice for "'knowing about a crime and failing to disclose it, or even concealing it.'" *Medina*, 7 S.W.3d at 641 (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)); *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Complicity with the defendant in another offense does not make the witness an accomplice. *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). Because the court of appeals did not conduct an error analysis, we do not reach the question of whether the party-conspirator theory was raised by the evidence at trial or whether the omission of the instruction was erroneous.

**1. *Almanza*, Generally**

Under *Almanza*, a trial court must submit a charge setting forth the law "'applicable to the case,'" which imposes a duty on trial courts to *sua sponte* instruct the jury on these matters. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *Almanza*, 686 S.W.2d at 160–74. The framework in *Almanza* "is not a court-made rule; it is based on this Court's interpretation of [the Texas Code of Criminal Procedure]," and its statutory predecessors. *Posey*, 966 S.W.2d at 60; *see* TEX. CODE CRIM. PROC. art. 36.14 ("[J]udge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case"). *Almanza* applies when "a rule or statute *requires* an instruction under the particular circumstances," and includes errors of commission and omission. *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008) (emphasis in original).

*Almanza*, however, does not apply to defensive issues, which may be forfeited if not preserved at trial. *See Posey*, 966 S.W.2d at 60–61; *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002). Defensive issues are those "on which instructions are not mandated by any statute." *Oursbourn*, 259 S.W.3d at 179. They involve strategic decisions and tactics generally left to the lawyer and the client. *Posey*, 966 S.W.2d at 63; *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

**2. Accomplice-Witness Instruction is Law Applicable to the Case**

An examination of the plain language in the accomplice-witness statute reveals that it is, in all its variations, the law applicable to the case rather than a defensive issue. The

accomplice-witness statute states,

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. art. 38.14. The statute's plain meaning disallows any conviction based upon uncorroborated testimony of an accomplice. *Oursbourn*, 259 S.W.3d at 180. The statute is not worded conditionally upon a defendant's proper objection or request for an instruction. *See* TEX. CODE CRIM. PROC. art. 38.14. The statute sets out an "implicit 'If-then' proposition: If the evidence raises an issue of [the witness's status as an accomplice], then the trial court shall instruct the jury [regarding the corroboration requirement]." *Oursbourn*, 259 S.W.3d at 180 (generally discussing group of statutes, including accomplice-witness statute, that "require[] an instruction under the particular circumstances" and, therefore, constitute "law applicable to the case"). In light of the plain language that a conviction cannot be had on the testimony of an accomplice unless it is corroborated, an instruction on the accomplice-witness rule is like those instructions that this Court has held to be the law applicable to the case. *Compare Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (holding that trial court has *sua sponte* duty to instruct based on statutory provision requiring proof of extraneous-offense evidence "beyond a reasonable doubt"); *Oursbourn*, 299 S.W.3d at 180–81 (holding that trial court has *sua sponte* duty to instruct based on statutory requirements governing admissibility of defendant's out-of-court statements).

The accomplice-witness rule cannot be reasonably categorized as a defensive issue that a defense attorney might forego as a matter of strategy.[5] *Compare Posey*, 966 S.W.2d at 61–62 (mistake-of-fact instruction matter of strategy); *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999) (same); *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010) (lesser-included-offense instruction is matter of strategy to pursue outright acquittal); *Delgado*, 235 S.W.3d at 250 (limiting instruction is matter of strategy to minimize jury's recollection of unfavorable evidence). We agree with those courts that have observed that it is difficult to envision that any competent attorney would reasonably forego an accomplice-witness jury instruction as a matter of strategy based on his theory of the case. *See Freeman v. State*, 352 S.W.3d 77, 82 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Howard v. State*, 972 S.W.2d 121, 126 (Tex. App.—Austin 1998, no pet.). This is especially true in light of the legislative determination to disallow a conviction on the uncorroborated testimony of an accomplice based on concern that such witnesses may have incentives to lie or shift blame, and this concern is equally applicable whether the witness is alleged to be a direct party or a party to the offense as a co-conspirator. *See Blake*, 971 S.W.2d at 454 (observing that rule reflects legislative determination to view accomplice testimony with

---

[5] At oral argument, the State asserted that an accomplice-witness-as-a-matter-of-fact instruction should be treated as a defensive issue rather than "law applicable to the case." In support, it cited this Court's opinion in *Cocke*, 201 S.W.3d at 747-48. But the State mischaracterizes the holding of that case. In *Cocke*, this Court held that the defendant was not entitled to an accomplice-witness instruction because there was "no evidence" to suggest that the witnesses in question were, in fact, accomplices. *See id*. at 749. Because it reached the merits of appellant's jury-charge complaint, the Court in *Cocke* did not address whether an accomplice-witness instruction should be treated as law applicable to the case or as a defensive issue.

caution because accomplices often have incentives to lie to avoid punishment or shift blame).

Having already determined in other cases that an accomplice-witness instruction must be analyzed under *Almanza* when it arises under a direct-party theory as a matter of law or as a matter of fact, today we hold that *Almanza* similarly applies when the instruction arises under a party-conspirator theory. Because it failed to apply *Almanza* to its party-conspirator theory analysis, the court of appeals erred.[6]

### III. Conclusion

We reverse the judgment of the court of appeals and remand this cause for consideration of appellant's charge-error complaint under *Almanza*'s procedural framework.

Delivered: October 23, 2013

Publish

---

[6] The court of appeals cited to *Marlo v. State* for support, but that case is distinguishable. *Marlo v. State*, 720 S.W.2d 496, 499-500 n.7 (Tex. Crim. App. 1986). In *Marlo*, this Court declined to consider the appellant's argument that the witnesses in question were accomplices under a party-conspirator theory because that argument was raised for the first time in a supplemental brief on petition for discretionary review and had not been presented to the court of appeals. *Id*. We do not read *Marlo* as holding, as the court of appeals below suggested, that the party-conspirator theory must be preserved in the trial court before that issue may be properly addressed by the court of appeals. *See id*. We also disapprove of holdings by other courts of appeals that have suggested that the issue of a trial court's failure to give an accomplice-witness instruction must be preserved for appeal. *See Green v. State*, 72 S.W.3d 420, 424 (Tex. App.—Texarkana 2002, pet. ref'd) ("[A]s [the appellant] did not request an accomplice as a matter of fact instruction, he has not preserved any error of the trial court in failing to give such instruction"); *see also Thomas v. State,* No. 04-06-00356-CR, 2007 WL 3171285, at *3 (Tex. App.—San Antonio Oct. 31, 2007, no pet.) (mem. op.); *Sutphen v. State*, No. 14-02-00114-CR, 2003 WL 1986991, at *2 (Tex. App.—Houston [14th Dist.] May 1, 2003) (mem. op., not designated for publication).