

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00098-CR

MICHAEL CHRISTOPHER FERRIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2012-C-0094

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Michael Christopher Ferris' identity as the claw-hammer-wielding assailant of a Panola County senior citizen, Bettie Barber, was triangulated by Barber's positive identification of Ferris, by Barber's companion's identification of Ferris leaving the scene of the attack, and by the presence of DNA from both Ferris and Barber on the hammer used in the attack. In addition to the strong evidence of his guilt, Ferris initiated the giving of a statement to law enforcement authorities, in which he admitted his guilt.[1] At trial, Ferris unsuccessfully asked the trial court to instruct the jury on the issue of the voluntariness of that statement. Ferris claims on appeal to have been harmed by that jury-instruction error. Because failing to instruct the jury on the statement's voluntariness was harmless error, we affirm Ferris' conviction for aggravated robbery and his sentence of life in prison.

After Ferris' trial counsel reviewed the proposed jury charge, counsel submitted a fairly lengthy list of requested instructions to the trial court. Requested instructions five, six, and seven all contain variations of language that would instruct the jury to disregard statements not made voluntarily under different portions of the applicable statute. *See* TEX. CODE CRIM. PROC. ANN. art 38.22 (West Supp. 2013).

Initially, on being questioned by the trial court, Ferris' counsel stated that he had compared the court's charge with his requested charges, that some were reflected in the court's charge, and that there was not necessarily an objection as to instructions one through five.

---

[1] Ferris actually gave two statements. The first statement disclaimed Ferris' involvement and claimed that the attack was done by a third party. Ferris initiated his giving of the second statement, the one admitting that he attacked Barber.

Counsel then addressed his requested instruction six, and it was discussed at length. Counsel skipped requested instruction seven, stating that his next requested instruction was number eight, addressing credibility and believability of witnesses. After this discussion, the trial court ruled, expressly denying requested instructions six, eight, and nine.

During the discussion, the State appears to have taken the position that, since the trial court admitted the statements and no evidentiary hearing had been requested on voluntariness, it would not be proper to give the requested instructions. However, a pretrial suppression hearing had been conducted addressing the statement. The court had found that the statements were voluntary, that warnings were administered and understood, and that Ferris knowingly and voluntarily waived his rights.

The initial question is whether the failure to give a jury instruction concerning the voluntariness of the statement is error. Our review is governed by Article 38.22, which sets out rules governing the admissibility of an accused's written and oral statements that are the product of custodial interrogation. *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008). Ferris claims that the question of the voluntariness of his custodial statements should also have been submitted to the jury as required by Section 6 of Article 38.22.

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts on which the conclusion was based, which order shall be filed among the papers of the cause. Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner. On the finding by the judge as a matter of law and fact that the

statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. We agree.

Counsel's objections to the charge, containing proposed instructions, were submitted and denied after a pretrial hearing. Evidence pertaining to the actions surrounding the taking of the statement was admitted. The objection and proposed instructions were essentially correct. Proposed instruction number five is taken directly from the statute quoted above, and proposed instruction number six is based on Section 7, referring to Section 2's statutory warnings that must be given before a statement can be properly taken. *See Oursbourn*, 259 S.W.3d at 175; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2.

Ferris argues in part that his proposed instructions that were not explicitly denied were granted and in part that the trial court erred by refusing to submit proposed instruction number five. The State appears to take the position that, by staying silent, the trial court granted proposed instruction five, the general voluntariness instruction, and that counsel then waived his right to that instruction because he did not object again when the charge, absent that language, was presented to the jury. Both of these arguments are efforts to apply standard preservation and waiver principles to alleged error in the jury charge. The analysis called for under *Almanza* is different; it is not a strict waiver or preservation question. *See* TEX. R. APP. P 33.1; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

4

In reviewing a claim of jury charge error, we first decide whether the trial court erred by not including the instruction. If error exists, then the question is whether the error was brought to the trial court's attention. Depending on the answer to the second question, we assess whether the error, if objected to, caused some harm or, if not objected to, caused egregious harm.[2] *See Zamora v. State*, 411 S.W.3d 504 (Tex. Crim. App. 2013).

The State attempts to argue a more stringent concept, contending that, because counsel did not object a second time to the absence of the instruction when the charge was read to the jury, counsel waived his complaint. This mixes two types of review. Counsel did what was necessary by bringing the absence of the instruction to the trial court's attention. It is the court's duty to provide a proper charge. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The concept of preservation is explicitly included within that Article, and its requirements are met by counsel making written objections to the charge presented by the court to counsel for review. *Id.*

The State also argues that, to raise the voluntariness issue, evidence tending to show lack of voluntariness must be provided through witnesses called by the defense and that cross-examination is not sufficient to provide such evidence. This argument is based on language in *Oursbourn* stating that the section-six instruction is proper, i.e., a question is raised, when a sequence of events occur. The last two factors are, sequentially, if the judge decides the confession was voluntary, "a party may offer evidence before the jury suggesting that the

___

[2]In other words, the standard of review for errors in the jury charge depends on whether the defendant properly objected. *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *Almanza*, 686 S.W.2d at 171; *Gornick v. State*, 947 S.W.2d 678, 680 (Tex. App.—Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of the defendant." *Almanza*, 686 S.W.2d at 171. An error that has been properly preserved is reversible unless it is harmless. *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012); *Almanza*, 686 S.W.2d at 171.

confession was not in fact voluntary; . . . if such evidence is offered before the jury, the trial judge shall give the jury a voluntariness instruction." *Oursbourn*, 259 S.W.3d at 174. The State reads this language to require direct evidence offered by the defendant. We disagree. The cited language does not explicitly make such a requirement, and we see no principled reason to require a defendant to separately call a witness who has already testified for the State so the defense can engage in direct questioning to elicit the same testimony available on cross-examination. That cannot be the meaning of the language used in *Oursbourn.*

Additionally, such a rule would be constitutionally suspect. If applied in this manner, often the only way a defendant could exercise the ability to attack the voluntariness of his statement would be by calling the only other person present—himself. This would seemingly implicate his right not to testify at trial.

Error exists. On cross-examination of two officers, Lannie Joe Mims and Sarah Fields, Ferris' counsel painted the picture of a young, tired, scratched up, handcuffed, partially clad Ferris being questioned at some length. That arguably raises a fact issue as to the voluntariness of the statements. Because counsel brought it to the court's attention by proper written objection, we review the record to determine if the error in some way injured Ferris' rights. In our review, we are to decide whether the error was in fact harmless, in light of the entire record.

Ferris was charged with aggravated robbery and the lesser offense of aggravated assault. Ferris argues that the absence of a complete charge was necessarily harmful and failed to fully instruct the jury on how to properly weigh the voluntariness of his statement—in the light of

6

extensive cross-examination by the deputies about the circumstances surrounding his statements. Ferris also points out that the State's closing argument relied on the fact that he "confessed."

Barber testified that she saw a young man outside her house and that he claimed his truck was broken down and wished to use her telephone. She went in the house to get her telephone, and he called out to her asking for some water too. As she turned around in the kitchen, he ran in and demanded money. When she indicated that she had none, he began beating her with a claw hammer. After multiple hammer strikes landed on Barber, Ferris ran out of the door, passing Barber's friend Buddy Wagstaff in the process and suggesting that Wagstaff check on Barber because she appeared to have sustained a heart attack. Barber was in a coma for eight days. After waking, Barber positively identified Ferris as the attacker from a photographic lineup and at trial.

Wagstaff also identified Ferris as the young man who ran by him on the way out of the house. Ferris was arrested within the hour after a short manhunt by authorities. He was described as running away from the area and was caught about five miles away from the house.

Joshawa Dorsey testified that he lived about 700 yards from Wagstaff's home and that he had allowed Ferris to stay overnight with him the day before the attack so he could apply locally for a job. Dorsey was also a young, white male and was out apparently wandering around the area when police converged on him. Dorsey was questioned, first on the spot and then at the police station. The hammer was Dorsey's and had been kept in his boat. Ferris disappeared from Dorsey's house about noon, and Dorsey told police and testified that he was out looking for Ferris at the time officers encountered Dorsey.

7

Ferris was found several hours later, several miles away, near a day-care facility. Someone within the facility had seen Ferris and called police. The hammer was tested for DNA, and Ferris' and Barber's DNA profiles were found on it. Ferris' DNA was identified on fourteen of the fifteen sites on the hammer that were tested for DNA.

Officers testified about the way in which the warnings were given before his statements and about Ferris' mental and physical condition at the time. He was described as physically tired but, other than that, as cool, calm, and collected. Fields also noted that Ferris contacted one of the officers because he wanted to change his statement so that it would contain language admitting taking Dorsey's hammer and attacking Barber. The result was Ferris' second statement, the one in controversy here.

The State used the confession to support its closing argument, but did not focus on it to a great degree. The State's evidentiary arguments were focused mainly on the DNA evidence, the testimony by Barber and Wagstaff, and the sequence of events while police were searching for the attacker.

Reversal is required if we conclude that this error injured the defendant. *Almanza*, 686 S.W.2d at 171; *Aguilar v. State*, 914 S.W.2d 649, 651 (Tex. App.—Texarkana 1996, no pet.). The presence of any harm, regardless of degree, is sufficient to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). There is no burden of proof on Ferris; our determination is made simply from a review of the record. *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005); *see Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008).

8

The record does not reflect any untoward action in connection with the statement. The testimony surrounding its making was clear and specific, and there was no evidence from which impropriety by the State could be implied. The evidence supporting the conviction was clear, both personal identification by two witnesses and scientific identification by DNA. From our review of the record, we find that there was no harm to Ferris.

We affirm the judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 6, 2014
Date Decided:       March 14, 2014

Do Not Publish