

# NUMBER 13-17-00609-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JUAN ALBERTO MORALES MARTINEZ,                                     Appellant,

v.

THE STATE OF TEXAS,                                     Appellee.

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Perkes
Memorandum Opinion by Justice Hinojosa**

A jury convicted appellant Juan Alberto Morales Martinez of two separate counts of injury to a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.04(a)(1). By three issues, Martinez argues that the trial court erred by: (1) not including the lesser-included instruction of criminal negligence; (2) failing to submit accomplice witness instructions; and (3) allowing the State to use improper argument during its closing in the

punishment phase.   We affirm.

## I.   BACKGROUND

### A.   Initial Investigation at the Hospital

At trial, Hidalgo County Sheriff's Office Investigator Anna Delia Mendez testified that she responded to a call from Edinburg Children's Hospital regarding a possible injury to a child.   Investigator Mendez arrived at the hospital and learned that A.M.[1], a 3-month-old infant, had "fractures to her body and it was a nonaccidental trauma." Investigator Mendez observed that A.M. had bruising to the right side of her head above her ear, a swollen right arm, and bruises on her chest area.   Mendez also observed that R.M., A.M.'s identical twin sister, "also had bruising on her body."   Eventually, authorities learned that A.M. had approximately thirty fractures in different stages of healing throughout her body, and R.M. had sixteen fractures throughout her body in the same healing stages.

Dr. Raquel Vargas-Whale, Medical Director of the Child Abuse Program at Driscoll Children's Hospital, also testified at trial.   Dr. Vargas-Whale leads a team that is "tasked for assessing children whenever there is a concern for abuse."   Dr. Vargas-Whale examined both A.M. and R.M.   Regarding the girls' injuries, Dr. Vargas-Whale confirmed that A.M. had approximately thirty fractures throughout her body.   She explained that, given the number of fractures, she was concerned that the baby might have a metabolic bone disease.   Further tests, however, revealed that the child's vitamin D, calcium, magnesium, and phosphorus levels were normal.   Dr. Vargas-Whale also ordered a

---

[1]   We use initials to protect the identities of minor children.   *See* TEX. R. APP. P. 9.8.

"very large DNA genetic panel" that ruled out genetic disorders like osteogenesis imperfecta which can result in fractures in children. Dr. Vargas-Whale testified that A.M. did not have any additional fractures after her placement in a different home.

## B.    Investigation of Defendant Martinez

Jonathan Flores, a Major Crimes Investigator with the Hidalgo County Sheriff's Office, interviewed Martinez, the girls' father. Investigator Flores testified that after he read Martinez his *Miranda* rights in Spanish, Martinez gave the following voluntary written statement:

> My name is Juan Alberto Martinez and I want to say that on Thursday, September 24, 2015[,] I got home from work at 5:30. I got home angry. My wife asked me why I was angry and I got angrier and we started arguing. I went to bathe and saw that my two daughters were in their crib in the bathroom. When I went into the bathroom I closed the door. I saw that one of the girls was on top of the other one. I took her by the arm and pulled her hard to one side. The baby began to cry. I want to say that the baby whose arm I pulled was [A.M.]. I went in to bathe and a few hours later my wife told me that [A.M.]'s arm was hurt. I told my wife that we would take her to the hospital in the morning. I also want to add that in the past I have slapped [A.M.] and [R.M.] because they cry a lot. I want to say that a few days before I grabbed [A.M.] by the feet and picked her up. [A.M.] was hanging upside down by her feet. [A.M.] started crying when I did that. I want to say that I have also pulled [R.M.]'s arm in the past. I want to say that my wife Azucena is incapable of hurting our girls because she loves them very much.

Investigator Flores testified that he re-read this statement to Martinez before Martinez willingly signed it. Investigator Flores further stated that Martinez initialed his waiver of several rights, such as his right to remain silent and his right to an attorney, after signing the statement. These rights were typewritten in Spanish.

**C. Testimony of Martinez's Wife, Azucena Valdivia Rodriguez**

Azucena Valdivia Rodriguez, Martinez's common law wife, testified at trial. She explained that she met Martinez in Mexico through mutual friends when she was seventeen years old and he was thirty-five. She moved to the United States with him when she was eighteen. She became pregnant with their son Bryan when she was nineteen and at age twenty became pregnant with their twin girls.

Azucena testified that she and Martinez had a troubled relationship. According to Azucena, Martinez believed that the twin girls were not his biological children. Martinez believed that Azucena had had an affair with a neighbor because the girls were light-complexioned, unlike Martinez. Thus, Azucena stated that he "rejected" the baby girls and treated them differently than he treated their son. She testified that Martinez "would throw [the girls] up in the air and he would slap them." She elaborated that he "would grab [A.M.] from her arm and throw her in the air." When asked to provide more explanation regarding the slapping, she testified that he would hit the three-month-old infants "on the face" "with his open hand." She testified that the girls would cry after these occurrences.

Azucena admitted to the jury that she "was a coward" for not reporting her husband to authorities for his mistreatment of their daughters. She explained to the jury that she had pleaded guilty to injury to a child by omission, a second-degree felony, and would be serving twenty years in the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 22.04(b).

4

**D.  Trial:  Discussion on the Lesser Included Jury Charge**

The parties had the following exchange regarding the lesser included jury instructions:

COURT:  Okay.  Where are we at on the charge . . . ?

STATE:  Judge, I have a draft of it. . . .  We text messaged last night in regards to any lesser included offenses.  [Defense counsel] mentioned she wanted to include recklessness and negligence.  I mean, Judge, I can see maybe the recklessness but I don't see—

COURT:  I don't see—

STATE:  —negligence.

COURT:  —any of that.  I don't see how you get recklessness.  He didn't testify to anything.

DEFENSE:  On recklessness, Judge?

COURT:  Uh-huh.

DEFENSE:  On recklessness he testified—I mean the evidence showed that through his statement that he—the actions that he did throwing up the child or grabbing could be seen as reckless certainly.

COURT:  Okay.

DEFENSE:  I tend to agree with [the State] with regard to the criminal negligence.  I guess, my position in wanting to include it was just out of an over[-]abundance of caution.

COURT:  Yeah.  Well, I can see that because I forgot about—I was just kind of focused on what he testified to and he didn't testify to anything but—yeah, if the statement is—if his statement is considered, obviously, then the recklessness is there.  So, yes, it would have to be part of the jury charge.

STATE:  Okay.

5

COURT:     Okay.   As far as an instruction.

DEFENSE:   Okay.

The final jury charge included an instruction on the lesser-included offense of recklessness, but not criminal negligence.   Martinez failed to object to this omission before the charge was submitted to the jury.   In short, although Martinez wanted to include the lesser included instruction of criminal negligence "out of abundance of caution," he failed to object to its omission.

## E.     Argument During Punishment Phase

Martinez contends that the State erred when it argued the following during the punishment phase of the trial:

> Did he accept responsibility?   Because if you don't own up to what you do, you can't ask for mercy.   Because the decision that the 12 of you make— that you give him an opportunity depending on your decision to harm again. So the decision that you make—it almost puts you in the same place that Azucena was.

Defense counsel objected, arguing that the statement was prejudicial.   The court overruled the objection.   Martinez contends that "the State was placing the jurors in the shoes of Azucena (the twins['] mother) and essentially, having them assess a sentence a protective Azucena would assess."

The jury found Martinez guilty of two counts of injury to a child, a first-degree felony, and assessed two separate life sentences.   *See* TEX. PENAL CODE ANN. §§ 12.32, 22.04(a)(1).   This appeal followed.

6

## II. ANALYSIS

### A.      Lesser-Included Instruction

"In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." TEX. CRIM. PROC. CODE ANN. § 37.08.   Martinez's first issue contends that the trial court erred by not including the lesser-included offense of criminal negligence because there was more than a scintilla of evidence to justify this instruction.

#### 1.  Standard of Review and Applicable Law

To determine whether a lesser-included offense instruction should be given, we apply a two-part test.   *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007).   "The first step is to determine whether the requested instruction pertains to an offense that is a lesser-included offense of the charged offense, which is a matter of law."   *Bullock*, 509 S.W.3d at 924.   "Under this first step of the test, an offense is a lesser-included offense if it is within the proof necessary to establish the offense charged."   *Id*.; *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09.

"The second step in the analysis asks whether there is evidence in the record that supports giving the instruction to the jury."   *Bullock*, 509 S.W.3d at 924 (citing *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011)).   "Under this second step, a defendant is entitled to an instruction on a lesser-included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense."   *Id*. at 925.   The evidence must establish that

7

the lesser-included offense is a valid, rational alternative to the charged offense. *Id.*

Because this is a question of fact that depends on the evidence presented at trial, we review the record as a whole to make this determination. *Salazar v. State*, 474 S.W.3d 832, 836 (Tex. App.—Corpus Christi-Edinburg 2015, no pet.); *Sweed*, 351 S.W.3d at 67–68. "Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a jury instruction on a lesser-included offense." *Hall*, 225 S.W.3d at 536. "Although this threshold showing is low, 'it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted.'" *Sweed*, 351 S.W.3d at 67–68 (citations omitted). "[T]he standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id.* at 68.

If there is error, we perform a harm analysis. "The erroneous refusal to give a requested instruction on a lesser-included offense is charge error subject to an *Almanza* harm analysis." *Nangurai v. State*, 507 S.W.3d 229, 234 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984) (en banc) (op. on reh'g). In this case, the defense did not object to the omission of the lesser included instruction, so we look for egregious harm. *Nangurai*, 507 S.W.3d at 234; *Almanza*, 686 S.W.2d at 171.

## 2. Analysis

Having reviewed the record, we conclude that Martinez meets the first part of the

lesser-included instruction test.  *Bullock*, 509 S.W.3d at 924.  An offense "is a lesser-included offense if it is within the proof necessary to establish the offense charged." *Bullock*, 509 S.W.3d at 924; *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09.  Article 37.09(3) of the Texas Code of Criminal Procedure provides that one offense is a lesser-included of a greater offense if it differs from the greater "only in the respect that a less culpable mental state suffices to establish its commission."  TEX. CODE CRIM. PROC. ANN. art. 37.09(3).  Because a negligent *mens rea* is a less culpable state of mind than an intentional *mens rea*, the first prong of this test is met.  *See Guzman v. State*, 188 S.W.3d 185, 190 (Tex. Crim. App. 2006).

The second part of the test requires us to determine whether there is evidence that Martinez only caused injury to his children through negligence.  *Bullock*, 509 S.W.3d at 925.  Based on our review, we conclude that this possibility is not supported by the record.  Martinez's voluntary statement admitting that he "slapped" his daughters, "pulled" his daughters' arms, "grabbed" one baby by her feet and hung her upside down, shows more than a negligent state of mind.  Martinez also acknowledged that he committed these acts because the girls "cried a lot"—indicating the intent of his actions.  Accordingly, we find no error in failing to include this instruction.  And because we determine there was no error, no harm analysis is required.[2]  We overrule this issue.

---

[2]    But even if there was error, it is harmless.   We note that the court included the lesser-included instruction of "recklessly" on the jury charge and that the jury declined to convict on that lesser-included instruction.   "Reckless" is a less culpable state of mind than "intentional" but more culpable than "negligent."   TEX. PEN. CODE ANN. § 6.02(d); *Guzman v. State*, 188 S.W.3d 185, 190 (Tex. Crim. App. 2006).

**B.    The Accomplice Witness Instructions**

Martinez's second issue asserts that the trial court egregiously harmed Martinez because it did not submit accomplice witness instructions to the jury.

**1.  Standard of Review and Applicable Law**

"A witness can be an accomplice as a matter of fact or as a matter of law."  *Ash v. State*, 533 S.W.3d 878, 884 (Tex. Crim. App. 2017).   The evidence produced at trial determines whether a defendant is entitled to an accomplice-witness instruction.  *Id*. (citing *Zamora v. State,* 411 S.W.3d 504, 510 (Tex. Crim. App. 2013)).   "If the record contains evidence that a witness may have been an accomplice, the issue should be submitted to the jury to decide whether the witness was an accomplice as a matter of fact."   *Id*.   If the witness has been charged with the same offense as the defendant or a lesser-included offense, then the witness is an accomplice as a matter of law.  *Zamora*, 411 S.W.3d at 510.   A witness is an accomplice as a matter of law if there is "no doubt or the evidence clearly shows" that the witness is an accomplice.  *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).

"Trial courts are obliged to instruct juries on 'the law applicable to the case,' which includes the statutory definitions that affect the meaning of the elements of the offense." *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14.   In analyzing a jury charge issue, we first determine whether error exists.   *See Almanza*, 686 S.W.2d at 174; *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).   If we find error, then we consider whether the error was harmful under the appropriate standard.  *Tottenham*, 285 S.W.3d at 30;

10

*see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal."). Under *Almanza*, the appellate court applies either the "some harm" standard if the complaint was preserved for appeal, or the "egregious harm" standard if complaint was not preserved for appeal. *Almanza*, 686 S.W.2d at 171.

Martinez's attorney did not object to the jury charge. Therefore, any potential error in the charge is reviewed only for "egregious harm." *See Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008). "This is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). "[T]he error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory." *Id.* In determining whether egregious harm is shown, we look at the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the whole record of the trial. *Id.* This analysis is fact-specific and done on a case-by-case basis. *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015).

"Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016). In assessing the strength of the non-accomplice evidence, we examine: (1) its

reliability or believability, and (2) the strength of its tendency to connect the defendant to the crime. *Id.*

### 2. Analysis

Azucena was charged with injury to a child by omission, which is a lesser included offense of Martinez's injury to a child charge. *See* Tex. Penal Code Ann. § 22.04(b). Thus, Azucena was an accomplice witness as a matter of law. *Zamora*, 411 S.W.3d at 510; *see also* Tex. Code Crim. Proc. Ann. art. 38.14 ("a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."). The failure to include an accomplice witness instruction was thus error. *Zamora*, 411 S.W.3d at 510.

Martinez, however, did not request the accomplice witness instruction or object to its omission. Accordingly, we evaluate whether the failure to include the instruction constitutes egregious harm. *Oursbourn*, 259 S.W.3d at 174. Based on our full review of the record, it does not. Martinez's voluntary statement to law enforcement officials provides corroborating, non-accomplice evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.14; *Ambrose*, 487 S.W.3d at 598. In his statement, Martinez asserted that the night before the girls went to the hospital, he came home from work angry. After arguing with his wife, he went to the restroom to shower and saw his twin three-month-old girls, R.M. and A.M., in a crib. He recalled that he saw that A.M. on top of R.M. so he "took [A.M.] by the arm and pulled her hard to one side." He remembered that A.M. cried after he did that. Later that evening, when his wife Azucena told him that A.M.'s arm was hurt, he

12

decided to wait to take the baby to the hospital in the morning. Martinez also informed Investigator Flores that he had slapped his infant girls in the past because they "cried a lot." Further, he admitted to grabbing A.M. by the feet and hanging her upside down, which made her cry. He also admitted to pulling R.M.'s arm in the past. He stated that his wife was "incapable of hurting our girls because she loves them very much."

Investigator Flores's testimony indicated that he properly admonished Martinez of his *Miranda* rights in Spanish prior to taking Martinez's statement. Further, Martinez initialed the Spanish translations informing him of his right to counsel and to remain silent. Thus, we find Martinez's statement to be reliable and believable. *See Ambrose*, 487 S.W.3d at 58. We also find Martinez's voluntary statement strong enough to connect him to the crime of injury to a child. *See id*. Because Martinez's voluntary statement is convincing and does not "render the State's overall case for conviction clearly and significantly less persuasive," we overrule this issue. *See Ambrose*, 487 S.W.3d at 598.

## C. Improper Argument

By his third issue, Martinez argues that the State used improper argument during closing argument. During its punishment argument, the State's prosecutor made the following argument regarding Martinez:

> Did he accept responsibility? Because if you don't own up to what you do, you can't ask for mercy. Because the decision that the 12 of you make— that you give him an opportunity depending on your decision to harm again. So the decision that you make—it almost puts you in the same place that Azucena was.

Martinez's counsel objected that this argument was prejudicial. The court overruled his objection. Defense counsel did not request that the statement be stricken from the

13

record or that the trial court declare a mistrial.

On appeal, he argues that the "State was placing the jurors in the shoes of Azucena (the twins['] mother) and essentially, having them assess a sentence a protective Azucena would assess. It was not a proper argument."

### 1. Standard of Review and Applicable Law

Jury argument is confined to four permissible areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady v. State,* 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). "Appellate courts should not hesitate to reverse when it appears the State has departed from one of these areas in argument and has engaged in conduct calculated to deny the accused a fair and impartial trial." *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002).

Improper argument constitutes reversible error if: (1) the argument is violative of a statute; (2) it injects a new and harmful fact into the case; or (3) it is manifestly improper, harmful, and prejudicial to the rights of the accused. *Id*.; *see also* TEX. R. APP. P. 44.2(a)-(b). In assessing the harm of improper jury argument during the punishment phase, the appellate court must balance the following factors: (1) the severity of the misconduct (ie:, its prejudicial effect); (2) curative measures; and (3) the punishment assessed. *Martinez v. State,* 17 S.W.3d at 677, 692–93 (Tex. Crim. App. 2000).

"Appellate courts have specifically held that it is improper for a prosecutor to ask members of the jury to place themselves in the shoes of the victim." *Boyington v. State*,

738 S.W.2d 704, 709 (Tex. App.—Houston [1st Dist.] 1985, no pet.) (citing *United States v. Cook,* 592 F.2d 877 (5th Cir. 1979); *Chandler v. State,* 689 S.W.2d 332 (Tex. App.—Fort Worth 1985, no pet.)).   In *Boyington v. State,* a case involving arson, the prosecutor argued as follows:

> This is called a punishment hearing. That is why you are here today. If you are going to go back there and show leniency, that's fine. But please have a good reason for it. Because what would you do if this happened to your family? You know, all of you have got families here and you have got kids and you have got a home. How would you feel if your home was firebombed one night and you saw your children on fire? What do you think should happen to a person like Barron Lee Boyington, that does something like that? And it is your opportunity to say, "Barron Lee Boyington, you have no right to do what you did to that Anderson family, and we aren't going to put up with it." So please put yourself in that place when you are deciding this. *Put yourself in the place of that Anderson family and imagine that was your family that was firebombed in the middle of the night. Imagine that it was your son that had his legs on fire. Imagine that it was your home that was burned out. Would you want mercy shown? Would you want leniency shown?*
>
> *And please keep in the forefront of your mind just like it was your family that received the fire bomb and you are in a den at 3:00 a.m. on a hot summer evening.*  Keep that in the forefront of your mind and just think what you would want to happen in that situation. (Emphasis in original).

*Boyington,* 738 S.W.2d at 709. The Houston appeals court held that defense counsel's failure to object to the argument was reversible error because "this argument openly pleads with the jury to abandon its objectivity in deciding the case."  *Id*.; *see Linder v. State*, 828 S.W.2d 290, 303 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

## 2.  Analysis

Here, during the punishment proceedings, the prosecutor urged the jury to consider whether Martinez showed accountability for his actions regarding his daughters'

15

injuries.[3]  The State also implied that the jurors were faced with a similar situation as Martinez's wife: whether to protect these two children from harm.   The prosecutor contended that Azucena could have protected her daughters from harm but she chose not to; the jurors now had to choose to protect the girls with their sentencing recommendation.   Specifically, the State argued, "Because the decision that the 12 of you make . . . you give him an opportunity depending on your decision to harm again.  So the decision that you make—it almost puts you in the same place that Azucena was."

We agree with Martinez that the comment complained of here was improper and the trial court's failure to sustain his objection constituted error.   *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); *Todd v. State*, 598 S.W.2d 286, 297 (Tex. Crim. App. 1980).   The remark did not attempt to summarize the evidence, encourage a reasonable deduction from the evidence, propose an answer to opposing counsel's argument, or make a plea for law enforcement.   *Cannady,* 11 S.W.3d at 213.

Although we find error, we cannot say it was harmful.   *Wilson*, 938 S.W.2d at 59; Tex. R. App. P. 44.2(a)-(b).   Our reading of the record as a whole concludes that this comment was isolated.   In this case, the prosecutor did not ask jurors to put themselves into the victims' shoes; rather, she encouraged jurors to put themselves in the place of the victims' mother.   This is a slight distinction from the *Boyington* case, where the State urged the jurors to place themselves directly in the victims' position.   *Boyington,* 738 S.W.2d at 709.   Further, unlike *Boyington*, this argument was not repeated.   In light of

---

[3]  The State claims that the objection at trial did not match Martinez's appellate complaint.   We disagree.   At trial, defense counsel objected that the prosecutors' argument was "prejudicial."   We conclude that this preserved error for improper jury argument.   *See* Tex. R. App. P. 33.1.

16

these facts, we do not perceive this comment to have been violative of a mandatory statute, or as having injected new or harmful facts to the accused into the trial, or extreme or manifestly improper.   *See Wilson*, 938 S.W.2d at 59; *see also* TEX. R. APP. P. 44.2(a)-(b).   We overrule this issue.

### III. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of June, 2019.