ACCEPTED
07-15-00079-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
12/22/2015 7:51:25 PM
Vivian Long, Clerk

NO. 07-15-00079-CR

STATE REQUESTS
ORAL ARGUMENT
ONLY IF APPELLANT
REQUESTS ARGUMENT

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
12/22/2015 7:51:25 PM
VIVIAN LONG
CLERK

IN THE

COURT OF APPEALS

FOR THE

SEVENTH JUDICIAL DISTRICT OF TEXAS

AMARILLO, TEXAS

**********************************************************************

KENYA ABDULE MARTIN,
APPELLANT,

VS.

THE STATE OF TEXAS,
APPELLEE

**********************************************************************

ON APPEAL FROM THE 47TH  DISTRICT COURT
CAUSE NO. 69,825-A
POTTER COUNTY, TEXAS
HONORABLE DAN SCHAAP, PRESIDING

**********************************************************************

STATE'S BRIEF

**********************************************************************

RANDALL  SIMS, DISTRICT ATTORNEY

JOHN L. OWEN, SBN 15369200
ASSISTANT DISTRICT ATTORNEY
501 S. FILLMORE, SUITE 5A
AMARILLO, TEXAS 79101
(806) 379-2325
jackowen@co.potter.tx.us
ATTORNEYS FOR THE STATE

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS…………………………………………………………2

LIST OF AUTHORITIES…………………………………………………….... 3

THE CASE IN BRIEF……………………………………………….......…4

STATEMENT OF THE CASE………………………………………………….5

STATE'S RESPONSIVE POINT……………………………………. 6
(ADDRESSED TO APPELLANT'S "ISSUES PRESENTED" ONE THROUGH
FOUR ):

    No egregious harm to appellant is presented in the jury charge instructions
    relating to accomplice witness testimony, or in the omission of accomplice
    witness instructions for the witnesses Marquis Wilkins and Korntee Fennell.


FACT STATEMENT …………………………………………. 7

RESPONSIVE POINT  RESTATED…………………………………………. 15

CONCLUSION AND PRAYER………………………………………… 24

CERTIFICATE OF SERVICE………………………………………… 25

CERTIFICATE OF COMPLIANCE……………………………………… 25

# LIST OF AUTHORITIES

Page

## Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1991.).................................. 19

*Cocke v. State*, 201 S.W.3d. 744, 747 (Tex.Crim.App. 2006) ........................... 20

*Coutta v. State*, 385 S.W.3d 641, 655 (Tex.App. - - El Paso 2012, no pet.) ...... 23

*Delacerda v. State*, 425 S.W.3d 367, 396(Tex.App. - - Houston [1st Dist], pet. ref'd)…………………………………………………………………………………….22

*Druery v. State*, 225 S.W.3d 491, 498-99 (Tex.Crim.App. 2007.)............... 20, 21

*Herron v. State*, 86 S.W.3d 621, 633 (Tex.Crim.App. 2002)........................ 19, 20

*McCallum v. State*, 311 S.W.3d 9, 14 (Tex.App. - - San Antonio 2010, no pet.) 19, 20

*Saunders v. State*, 817 S.W.2d 688, 6923 (TexCrim.App. 1991)........................ 20

*Smith v. State*, 332 S.W.3d 425, 439-40 (Tex.Crim.App. 2011) ........................ 23

*Zamora v. State*, 411 S.W.3d 504, 513 (Tex.Crim.App. 2013)........ 19, 20, 21, 22

## Statutes

Tex. Penal Code Ann. Sec. 19.03 (a)(2)(West. Supp. 2015)....................................5

Tex. Code Crim. Proc. Ann. Art. 38.14 (West. 2005) ...........................................19

NOS. 07-15-00079-CR

IN THE

COURT OF APPEALS

FOR THE

SEVENTH JUDICIAL DISTRICT OF TEXAS

AMARILLO, TEXAS
*********************************************************************
KENYA ABDULE MARTIN,
Appellant,

VS.
THE STATE OF TEXAS,
Appellee.
*********************************************************************
TO THE HONORABLE COURT OF APPEALS:

COMES NOW the State of Texas, appellee in the above entitled and numbered appeal, by and through its 47th District Attorney, and submits its brief in response to the brief of appellant, Kenya Abdule Martin. Appellant was convicted in the 47th Judicial District Court of Potter County, Texas of capital murder; the State having waived the death penalty, punishment was fixed at life imprisonment without parole, according to law.

4

## STATEMENT OF THE CASE

Appellant brings this appeal from his capital murder conviction and resulting life prison sentence. *See* Tex. Penal Code Ann. Sec. 19.03 (a)(2)(West Supp. 2015). He here alleges egregious harm resulted from the trial court's omission of accomplice witness instructions relative to the witnesses Marquis Wilkins and Korntee Fennell; further, he sees egregious harm in the accomplice witness instruction the court did give respecting the witness Andrea Brown.

The Potter County grand jury on December 17, 2014 indicted appellant for the capital murder offense, which was alleged to have occurred on or about May 1, 2013. *CR: 5.* The State waived the death penalty.

After a trial had February 17-20, 2015, a jury convicted appellant of the indicted offense. *CR: 65.* Punishment at life imprisonment without parole was automatic; the court imposed sentence on February 20, 2015. *CR: 65.* Appellant timely, on March 2, 2015, filed a notice of appeal. *CR: 61.*

**STATE'S RESPONSIVE POINT**

(ADDRESSED TO APPELLANT'S "ISSUES PRESENTED" ONE THROUGH FOUR ):

No egregious harm to appellant is presented in the jury charge instructions relating to accomplice witness testimony, or in the omission of accomplice witness instructions for the witnesses Marquis Wilkins and Korntee Fennell.

**FACT STATEMENT**

Appellant does not directly contest the evidence's sufficiency to support his conviction. He does assert that the trial court should have given accomplice witness instructions relating to the witnesses Korntee Fennell and Marquis Wilkins; for that reason, the State here provides a brief narrative of the trial evidence to set a context for its response.

The State's theory of prosecution, in a nutshell, was as follows: Four persons, including appellant, at about 6:00 a.m. on May 1, 2013, drove from the apartment they shared to the victim Edward Pendleton's residence. Three of the confederates broke into the residence, and appellant shot the victim; that group then fled with a purse believed to contain money and returned to the automobile whose waiting driver then drove from the scene.

Appellant's defense, advanced through his cross-examination of the State's witnesses, was that the group did not include appellant. The following is a re-cap of evidence relevant to appellant's complaints here.

Danielle Luce ("Danielle") testified that, before the offense occurred, she had been in bed with her husband, the victim. *RR2: 214*. She was awakened by a loud noise, which she thought was their television following from its stand in the living room. *RR2: 216*. The victim quickly left their bed and ran into the living

7

room; Danielle then heard two gunshots. *RR2: 217*. She went to the door of their bedroom, and saw, in the living room, a black male wearing dark pants and a dark hoodie standing over the victim lying on the floor; that man then shot the victim in the back. *RR2: 217, 234.* Danielle later described the gun to police as a black semi-automatic pistol with brown wooden grips. *RR2: 219, 256*. She also saw another black male in the living room wearing white; that man had no gun. *RR2: 217, 220.*

Danielle retreated into the bedroom and slammed the door, pleading with the intruders not to hurt her young son. *RR2: 220.* The two men pushed open the door and demanded to know where the money was. *RR2: 220.* Danielle pointed to a purse in a bassinet, and the man not holding a gun grabbed it. *RR2: 220.* The men went through the victim's pants pockets, then left the residence. *RR2: 220-21*.

The victim had been involved in drug trafficking, Danielle acknowledged. *RR2: 212, 223, 261*. That circumstance was a point of contention between her and the victim, Danielle noted, and she had forbidden such activity to occur in their house. *RR2: 213*.

After the men left the house, Danielle went to the victim and tried to stop the bleeding from his wounds. *RR2: 221*. The victim was still alive, and repeated the

name "Damarrus, Damarrus. *RR2: 221*. When she went to get water for the victim, Danielle called 911. *RR2: 221*.

Amarillo police officers and paramedics arrived at the victim's residence shortly after 7:00 a.m. *RR2: 252; RR3: 14*. Paramedics transported the victim to Amarillo's Northwest Texas Hospital. *RR3: 18*. The victim was pronounced dead at 8:37 a.m. *RR3: 19*.

The causes of the victim's death were gunshot wounds to the arm and torso, Lubbock forensic pathologist Thomas Parsons testified. *RR3: 51*. Dr. Parsons noted three gunshot wound pairings: an entrance wound below the right clavicle and exit through the back; an entrance through the upper arm deltoid area, and exit near the clavicle; and an entry wound to the left buttock, with the bullet lodged beneath the skin on the right side of the chest. *RR3: 52, 63*. The upper arm/torso bullet would not necessarily have been fatal; but, the wounds from the other two gunshots would have been, respectively, either potentially or probably fatal individually, Dr. Parsons opined. *RR3: 57, 58, 63*.

Later at the police station, Danielle was shown a photographic lineup. *RR2: 227, 263-265*. Danielle was unable to positively identify anyone in the photographic array as a perpetrator. *RR2: 265*. Nonetheless, she became upset

upon viewing the photograph of Damarrus Ary, reiterating, though, that she could not be 100% certain. *RR2: 271-72.*

Possible suspects in the crime were identified when Amarillo police officer Marcum spoke with the victim's family and friends at the hospital, after a doctor had told them of the victim's death. *RR3: 30.* When Marcum asked who could have been responsible, one of those present gave him Facebook photographs from a phone with internet capability. *RR3: 32.* Marcum forwarded those photographs to an officer at the murder scene so that officer could then convey them to the police Special Crimes Unit. *RR3: 33.* The investigation narrowed when Damarrus Ary, at about 1:00 p.m., contacted police about threats he had received. *RR3: 137.* After interviewing Ary at the Special Crimes Unit office, officers became interested in searching the apartment Ary shared with other persons. *RR3: 143.*

Two significant State's witnesses were Andrea Brown ("Andrea") and Marquis Wilkins ("Marquis"). Those witnesses figure in appellant's complaints about the jury charge.

Andrea was connected with the offense on trial. Pursuant to a plea bargain, she pled guilty to aggravated robbery and was sentenced to 5 years imprisonment; as part of the plea bargain, she promised to testify truthfully in the trial of the other participants in the crime. *RR3: 184.*

At the time in question, Andrea related, she lived in apartment with her friend Korntee Fennell, Korntee's boyfriend, Marquis, and Marquis' friend, Zyrus Williams ("Zyrus"). . *RR3: 153*. Also staying at the apartment sometimes were Stevon Polk ("Stevon") and Demarrus Ary. *RR3: 153*. A day or two before May 1, Stevon brought a new friend "K," later identified as appellant, to the apartment. *RR3: 154*. At some point prior to the offense, Andrea saw appellant in the bathroom holding bullets in his shirt to avoid touching them, and loading them into a gun. *RR3: 175*.

The morning of May 1, Demarrus and Stevon asked her for a ride to "hit a kick." *RR3: 158*. She agreed, and appellant also accompanied them. *RR3: 158*. En route to the destination Stevon directed her to, the men discussed who was going to kick the door open. *RR3: 160*. She parked a block over from the destination residence, and sat in her car and waited after the men exited. *RR3: 163*. A time later, she saw Demarrus running toward her car with a purse in hand, followed by Stevon and appellant; appellant was carrying a gun. *RR3: 163*.

Back in the car, Stevon looked like he was in shock, Demarrus looked scared, and appellant looked angry and upset. Appellant said, "I clapped that nigger." Further, appellant remarked that "things wouldn't have happened like that if everyone had done what they were supposed to." *RR3: 165*. Stevon interjected that what happened was not what was planned. *RR3: 187*. Andrea drove back to

11

their apartment. *RR3: 170.* Later, Demarrus left when his brother came to pick him up; appellant admonished Demarrus not to talk about what had happened. *RR3: 171, 173.*

After Demarrus had left, Andrea agreed to take appellant and Stevon to get marijuana. *RR3: 176*. While on that mission, she was stopped by police. *RR3: 178.*

According to Marquis in his testimony, he remained in the apartment throughout the day in question. That morning, he recounted, he arose early to baby-sit his niece and daughter. *RR4: 18*. Shortly after he got up, Stevon, Andrea, and appellant left the apartment. *RR4: 19*. Later, they returned; Stevon came into his room and, looking frightened, said, "We had to burn a nigger." *RR4: 21*. Stevon repeated that declaration when Marquis asked what he was talking about. *RR4: 22*. Marquis put his daughter to bed, and entered the living room. There, appellant told him what had happened: Stevon kicked open the door to the victim's residence; the victim came running around the corner and appellant shot him; and, appellant walked inside the residence and shot the victim two more times. RR4: 25.

Marquis saw a purse between appellant and Andrea; appellant, Stevon, and Andrea rifled through the purse. *RR4: 26*. Stevon was wearing Marquis' Adidas shoes. *R4: 29.* That evening, Marquis and Zyrus left the apartment for food. Police officers intercepted them and took them to the police station. *RR4: 32.*

In April, 2013, Marquis acknowledged, he, Stevon, and Korntee's brother committed an aggravated robbery at a convenience store. *RR4: 14.* At the time of the occurrence on trial, police were unaware of Marquis' involvement in the earlier robbery. *RR4: 17.* In the search of the apartment following Marquis' detention, evidence was found to partially solve the earlier robbery. *RR4: 33.* Aided by counsel, Marquis pled guilty to the April 2013 robbery, and at the time of appellant's trial was serving a six-year prison sentence. *RR4: 14, 33.*

Less directly, Korntee's testimony tended to incriminate appellant. The morning of May 1, Korntee related, she noticed that some of the apartment occupants were gone when she awoke. She went back to sleep, and upon awakening again, realized those persons had returned. *RR3: 246* Stevon came into her room "looking terrified." *RR3: 247.* Korntee left the apartment for her job, and later, school. *RR3: 247.* When she returned home from school, Stevon and appellant were talking. Stevon said appellant had shot the gun; appellant was sitting with a gun on his lap. *RR3: 253.* Andrea, Stevon, and appellant left. Later, after Marquis and Zyrus left for food, police officers arrived at the apartment to execute a search warrant. *RR3: 255.* Korntee admitted she did not tell police investigators all she knew because she "didn't think it was her business." *RR3: 256.*

Other evidence incriminating appellant was: a gun was recovered under the seat where appellant was sitting in Andrea's car when officers stopped her, *RR4: 82;* the ammunition in the magazine of that gun was the same brand and caliber as the ammunition found in a search of the apartment where appellant was staying, *RR4: 96;* appellant's finger and palm prints were recovered from the ammunition box, *RR4: 136;* appellant's fingerprints were found on the gun and its magazine, *RR4: 152;* in a recorded telephone conversation with a female appellant identified as his sister while he was in the Potter County Detention Center, appellant tacitly admitted to participating in the crime, *RR4: 211-12*; a Department of Public Safety expert, after testing, determined that the spent bullets recovered from the murder scene came from the gun recovered from where appellant was sitting in Andrea's car, *RR4: 220-22;* and, the clothing appellant was wearing when arrested was similar to what Danielle described as the gunman's clothes. *RR3: 238, State's Exhibits 173-178*

Appellant did not testify. Beyond cross-examination of the State's witnesses, he presented no evidence in his behalf.

# STATE'S RESPONSIVE POINT

(ADDRESSED TO APPELLANT'S "ISSUES PRESENTED" ONE THROUGH FOUR (RESTATED):

No egregious harm to appellant is presented in the jury charge instructions relating to accomplice witness testimony, or in the omission of accomplice witness instructions for the witnesses Marquis Wilkins and Korntee Fennell.

## I.     *Background*

The trial court included, either at appellant's request or with his acquiescence, an accomplice witness instruction in the jury charge. That instruction was as follows:

A conviction cannot be had upon the testimony of an accomplice unless the jury first believes that the accomplice's evidence is true and that it shows the defendant  is guilty of the offense charged against him, and even then you cannot convict unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission.

You are further instructed that mere presence of the accused in the company of an accomplice witness shortly before or after the time of the

offense, if any, is not, in itself, sufficient corroboration of the accomplice witness' testimony.

You are further instructed that while the testimony of an accomplice must be corroborated by proof that tends to connect the defendant to the crime, the defendant's knowledge or intent may be established by the uncorroborated testimony of the accomplice.

You are charged that ANDREA BROWN was an accomplice if any offense was committed, and you are instructed that you cannot find the defendant guilty upon the testimony of ANDREA BROWN unless you first believe that the testimony of the said ANDREA BROWN is true and that it shows the defendant is guilty as charged in the indictment; and even then you cannot convict the defendant unless you further believe that there is other evidence in this case, outside the evidence of said ANDREA BROWN, tending to connect the defendant with the commission of the offense charged in the indictment and then from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty.

An accomplice as the word is here used, means anyone connected with the crime charged as a party to the offense.

*CR: 56-57; RR5: 17-18.*

16

## II. *What Appellant Sees as Egregious Harm From the Charge*

Appellant faults the trial court for not *sua sponte* giving instructions on the witness Marquis Wilkins as an accomplice as a matter of law or as a matter of fact. Further, says appellant, the court should have instructed the jury on witness Korntee Fennell as an accomplice as a matter of fact. Appellant identifies certain trial facts, as the State here paraphrases them, as having entitled him to such accomplice witness instructions:

- Stevon Polk may have been wearing Marquis' shoe when kicking in the victim's door and walking in the victim's blood;

- Marquis had committed an aggravated robbery  a couple of weeks before the offense on trial;

- Marquis "harbored" Stevon Polk at the apartment after the offense;

- Police initially, upon detaining Marquis, deemed him a suspect;

- Korntee initially was not forthcoming to police, presumably to protect Marquis.

Finally, appellant takes issue with the wording of the accomplice witness instruction the court did give, as set out above.  By the court's definition, an accomplice is one who *is* charged with the offense, appellant points out; implicitly excluded from being an accomplice, under that definition, is one who *could be*

17

charged with offense. The consequence, appellant posits, is that the jury would deem itself foreclosed from considering the possibility a witness other than Andrea Brown was an accomplice whose testimony required corroboration. The charge errors he notes allowed the jury to give undue weight to the testimony of Marquis and Korntee, resulting in egregious harm, appellant submits.

### III.    *Summary of the State's Response*

No evidence was presented of an affirmative act by either Marquis or Korntee to assist in the victim's murder; neither was evidence presented those witnesses had any involvement as co-conspirators. No basis existed, then, for the trial court to give accomplice witness as a matter of law or fact instructions as to either witness, even if such had been requested. Even if, as appellant contends, the court's definition of "accomplice" should have also included one who *could be* charged with the offense, no error is shown;  again, no evidence was advanced any testifying witness other than Andrea Brown participated in the offense.

### IV.    *Argument and Authority*

Our legislature has provided that

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Tex. Code Crim. Proc. Ann. Art. 38.14 (West 2005).

An accomplice witness instruction is a matter of entitlement if the evidence supports characterization of a witness as an accomplice. An accomplice witness instruction under that circumstance is "the law of the case," not a defensive theory which is altogether forfeited on appeal if the instruction is not requested at trial. *Zamora v. State*, 411 S.W.3d 504, 513 (Tex.Crim.App. 2013).

In the trial court, appellant did not seek accomplice witness instructions respecting the witnesses Marquis Wilkins and Korntee Fennell; neither did he complain about the wording of the accomplice witness instruction the court gave *vis a vis* Andrea Brown. To gain a reversal on appeal, then, appellant must show egregious harm. *Herron v. State*, 86 S.W.3d 621, 632 (Tex.Crim.App. 2002), *citing Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). Under the egregious harm standard, omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less

persuasive.' *Herron v. State*, 86 S.W.3d at 632, *citing Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991).

Our Court of Criminal Appeals in *Zamora v. State* succinctly synthesized the principles governing a trial court's provision of an accomplice witness instruction:

> A proper accomplice-witness instruction informs the jury either that a witness is an accomplice as a matter of law or that he is an accomplice is a matter of fact. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex.Crim.App. 2006). The evidence in each case will dictate the type of accomplice-witness instruction that needs to be given, if any. *Id*. A witness is an accomplice as a matter of law when the witness has been charged with the same offense as the defendant or a lesser-included offense, or 'when the evidence clearly shows that the witness could have been so charged.' *Cocke*, 201 S.W.3d at 747-48; *Druery* [*v. State*], 225 S.W.3d [491,] at 499 [Tex.Crim.App. 2007]. For accomplice witnesses as a matter of law, the trial court affirmatively instructs the jury that the witness is an accomplice and that his testimony must be corroborated. *See Druery*, 225 S.W.3d at 498-99. In contrast, when the evidence presented by the parties as to the witness's complicity is conflicting or inconclusive, then the accomplice-witness instruction asks the jury to (1) decide whether the

witness is an accomplice as a matter of fact, and (2) apply the corroboration requirement, but only if it has first determined that the witness is an accomplice. *Id.*

411 S.W.3d at 510.

To be considered an accomplice witness, the witness's participation must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *Druery v. State*, 225 S.W.3d at 498. Or, the evidence must show the witness was involved under a party-conspirator theory. *Zamora v. State*, 411 S.W.3d 513.

A witness is not an accomplice merely because he knew of the offense and did not disclose it, or even if he concealed it. *Druery*, 225 S.W.3d at 498. Evidence must be present the witness did an affirmative act to assist in the commission of the charged offense to warrant an accomplice witness instruction; that obtains whether an accomplice as a matter of law or an accomplice as a matter of fact instruction is sought. *Id.* at 499.

Here, no evidence whatever was presented to suggest either Marquis or Korntee was at the scene during the victim's murder. Neither was there any indication in the trial evidence they had participated in any discussion about the robbery/murder beforehand. Marquis's allowing Stevon to wear Marquis's shoe,

21

if that happened, does not implicate Marquis in the offense; nor does his not ejecting Stevon from the apartment upon learning of the murder. That Marquis, upon leaving the apartment hours after the murder with Zyrus, was detained by police is inconsequential; the immediate concern of the officers was to secure the apartment for execution of a search warrant. Ultimately, after the search of the apartment, Marquis was arrested for an earlier robbery; but, investigating officers did not seek to develop a case against him for the instant offense. Likewise, Korntee's reluctance to share information when officers questioned her did not make her an accomplice.

The essence of Marquis' and Korntee's connection to this case was that they knew the persons who committed the robbery/murder and did not enthusiastically assist police investigators. That barest of connection did not warrant an accomplice witness instruction for those witnesses. *See Druery v. State, supra,* 225 S.W.3d at 499 (accused's former girlfriend and younger friend were neither accomplices as a matter of law or as a matter of fact; they were with accused when he killed the victim and helped dispose of the victim's body and murder weapon, and received money from the accused, but did not affirmatively assist in the murder); *Delacerda v. State*, 425 S.W.3d 367, 396 (Tex.App. - - Houston [1[st] Dist.] 2011, pet. ref'd)( pickup owner, who rode as a passenger, did not demand that the driver avoid a confrontation with a group of young men, did not interfere with the

22

accused's get-away, and disposed of shell casings after drive-by shooting; she did not perform any affirmative act to make her an accomplice); and, *McCallum v. State*, 311 S.W.3d 9, 14 (Tex.App. - - San Antonio 2010, no pet.)(accused's stepson and wife were not accomplice witnesses in criminally negligent homicide prosecution; stepson was with accused during assault on victim and disposed of the victim's wallet, wife pawned the victim's bracelet, and both witnesses were uncooperative with police; still, neither acted affirmatively to promote the offense).

When the evidence clearly shows a witness is not an accomplice, the trial court is not required to provide an accomplice witness instruction. *Smith v. State*, 332 S.W.3d 425, 439-40 (Tex.Crim.App. 2011). Such was the case here; Marquis and Korntee were not accomplices. That circumstance  moots the complaint encompassed in appellant's fourth "Issue Presented," in which he contends the court incorrectly defined the term "accomplice." *See Coutta v. State*, 385 S.W.3d 641, 655 (Tex.App. - - El Paso 2012, no pet)(error in including accomplice witness instruction accused not entitled to was inconsequential).

By his four "Issues Presented," appellant has shown no cause for disturbing the judgment. The Issues should be decided in favor of the judgment.

## CONCLUSION AND PRAYER

WHEREFORE, the State prays that the judgment of conviction be affirmed .

Respectfully submitted,

RANDALL SIMS
District Attorney
Potter County, Texas

\_\_/s/ John L. Owen\_\_\_

John L. Owen
Assistant District Attorney
Potter County Courts Bldg.
Suite 5A
501 S. Fillmore
Amarillo, Texas 79101
(806) 379-2325
FAX (806) 379-2823
SBN 15369200
jackowen@co.potter.tx.us

Attorneys for the State

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd       day of December, 2015 a true copy of the foregoing State's brief was served on appellant's attorney, John Bennett, at Post Office Box 19144, Amarillo, Texas 79114, by depositing the same in the United States Mail, postage prepaid, and by email.

> __/s/ John L. Owen___
> Assistant District Attorney

**CERTIFICATE OF COMPLIANCE**

In accordance with Tex.R.App. 9.4 (i)(3), I hereby certify that the foregoing brief contains, as reflected in the computer word count, 4,424 words. That count includes word in portions of the brief which, under the Rule, are excluded from the prescribed word limit. The brief is printed in 14-point typeface.

> __/s/ John L. Owen___
> Assistant District Attorney