**Opinion filed January 4, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00119-CR

_____

## ZACHARY NOEL MORELOS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 22037-B**

### M E M O R A N D U M   O P I N I O N

Appellant, Zachary Noel Morelos, was convicted of murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b) (c) (West Supp. 2023). The jury assessed his punishment at imprisonment for a term of ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ), and the trial court sentenced Appellant accordingly. On appeal, Appellant challenges his

conviction in two issues. First, he argues that the trial court erroneously failed to include an accomplice-witness instruction in the trial court's charge. Second, he asserts that his trial counsel rendered ineffective assistance for failing to request an accomplice-witness instruction. We affirm.

*Factual and Procedural History*

Jacob Garcia and his wife, Monica Deltoro,[1] were Appellant's close friends. On Saturday, May 4, 2019, Garcia and Monica had invited people to their home in Abilene. Appellant and Valles arrived at the Garcia home between 4:00 p.m. and 6:30 p.m. in Valles's vehicle. Monica's brother, Gerald Deltoro,[2] and his wife, Tatum Lopez, attended as well.

Earlier that afternoon, Appellant and Valles had been "chilling back" and drinking "a little beer" in Appellant's front yard. Around 2:00 p.m., Deltoro and Lopez saw Appellant and Valles in Appellant's front yard as they were driving by, and they stopped for a brief conversation. Appellant showed Deltoro "the gun that he had got that day," which Lopez described as "real small . . . like a .380 . . . solid black gun." Appellant was "holding it to [Deltoro]'s side and just playing with him." Before leaving, Deltoro invited Appellant and Valles to Garcia's and Monica's house that evening.

Later that evening, Garcia, Deltoro, Valles, and Appellant were in Garcia's front yard drinking, "clowning, joking around . . . nothing too aggressive," until Appellant hit Deltoro "pretty hard" in the chest. Valles took Deltoro inside "to diffuse the situation" while Garcia stayed with Appellant outside. Valles went back outside to drive Appellant home, and Monica followed. Garcia was standing outside

---

[1]We will refer to Monica Deltoro as "Monica."

[2]We will refer to Gerald "J.J." Deltoro as "Deltoro."

2

the passenger window of Valles's car, and Appellant was in the passenger seat. When Valles got into the driver seat and told Garcia and Monica they were leaving, Appellant pulled out his gun, cocked it back, and shot Garcia in the chest.

Valles "didn't know what to do," so he grabbed the gun, and drove away when Appellant told him to "go." He drove straight to his friend's house to hide the gun, then made a few more stops before he and Appellant headed eastbound on Interstate 20.

At 11:48 p.m., police stopped Valles and Appellant on Interstate 20 as they were passing through Eastland County. Appellant was "argumentative, defiant, arrogant," and showed signs of intoxication. Valles, by contrast, was "upset, but remained calm and polite." Valles told police that Appellant shot Garcia and took them to the location of the murder weapon. Appellant was arrested and charged with committing murder by intentionally or knowingly causing the death of Jacob Garcia by shooting him, and by committing an act clearly dangerous to human life— shooting Jacob Garcia—that caused Garcia's death. *See* PENAL § 19.02(b)(1)–(2).

At trial, Monica and Valles testified that Appellant shot Garcia. Valles described how Appellant "cocked the gun back," then he heard "a 'pow.'" Monica heard Valles saying "no, no, no," and saw him reaching toward Appellant "[l]ike [Valles] was trying to block" the gun. Monica was positive she saw nothing in Valles's hands and saw the gun in Appellant's hand. According to Valles, he grabbed Appellant's hands, "forced the gun out," and tucked it underneath his seat before driving away.

Valles was convicted of hindering apprehension or prosecution for his involvement after the shooting, and he received no special consideration in exchange for testifying against Appellant. *See* PENAL § 38.05(a)(2) (West 2016). The jury

convicted Appellant of murder and sentenced him to imprisonment for ninety-nine years in the Institutional Division of TDCJ.

## Charge Error

Appellant asserts in his first issue that the trial court's charge should have included an accomplice-witness instruction, and that he was egregiously harmed by the lack thereof. We conclude that Valles was not an accomplice, and that, even if an accomplice-witness instruction was required, Appellant was not egregiously harmed by the omission of such an instruction in the trial court's charge.

### Standard of Review

While "the jury is the exclusive judge of the facts," the trial court submits a charge to the jury "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. arts. 36.13, 36.14 (West 2007). The purpose of the trial court's charge is to inform the jury of the applicable law and how to apply it to the facts of the case. *Alcoser v. State*, 663 S.W.3d 160, 164–65 (Tex. Crim. App. 2022). Reviewing claims of jury-charge error involves two steps. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we determine whether there is error. *Id.* Second, if there is error, we must decide whether the appellant was harmed by the error. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)).

### Accomplice Witnesses

Texas law provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." CRIM. PROC. art. 38.14 (West 2023). "[A]nd the corroboration is not sufficient if it merely shows the commission of the offense." *Id.* If an accomplice testifies for the State, the accomplice's testimony

4

must be corroborated by non-accomplice evidence that tends to "connect the accused to the offense." *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016) (quoting *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011)).

"An accomplice is an individual who participates with a defendant before, during, or after the commission of the crime and acts with the requisite culpable mental state." *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). The conspiracy theory of party liability applies in the accomplice-witness context. *Zamora v. State*, 411 S.W.3d 504, 511 (Tex. Crim. App. 2013) (discussing PENAL §§ 7.01–.02). A co-conspirator is criminally responsible for an offense committed by another if he "solicits, encourages, directs, aids, or attempts to aid" another in the commission of the offense, "with intent to promote or assist the commission of the offense." PENAL § 7.02(a)(2).

"A proper accomplice-witness instruction informs the jury either that a witness is an accomplice as a matter of law or that he is an accomplice as a matter of fact." *Zamora*, 411 S.W.3d at 510. "The evidence in each case will dictate the type of accomplice-witness instruction that needs to be given, if any." *Id.* "A witness is an accomplice as a matter of law when the witness has been charged with the same offense as the defendant or a lesser-included offense, or 'when the evidence clearly shows that the witness could have been so charged.'" *Id.* (quoting *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007)).

On the other hand, if there is conflicting or inconclusive evidence that a witness was complicit in the crime, then the witness is an accomplice as a matter of fact. *Id.*; *Castillo v. State*, 517 S.W.3d 363, 372 (Tex. App.—Eastland 2017, pet. ref'd). When the witness is an accomplice as a matter of fact, the trial court must instruct the jury (1) to decide whether the witness is an accomplice, and if so, (2) to apply the corroboration requirement. *Zamora*, 411 S.W.3d at 510.

*Analysis*

Appellant argues that Valles is an accomplice as a matter of law because "Valles was driving at the time of the shooting, fled the scene, hid what he asserted was the weapon, and might have been the actual shooter himself." We find no evidentiary support for Appellant's theory that Valles "might have been" the principal actor. And while Valles did in fact hide the murder weapon after driving Appellant away from the crime scene, nothing in the record indicates Valles "act[ed] with the requisite culpable mental state." *See Cocke*, 201 S.W.3d at 748. Accordingly, an accomplice-witness instruction was not warranted.

We addressed this issue in *Castillo* and held that "a witness who assisted the defendant only *after* the defendant committed the crime with which he is charged cannot be an accomplice witness because the witness cannot be charged with the same offense as the defendant." *Castillo*, 517 S.W.3d at 375 (emphasis in original). In *Castillo*, a witness drove Castillo and his co-defendant to the victim's apartment and waited in the car while Castillo went inside and shot the victim. *Id.* at 369–70. When the witness heard gunshots, she began to drive away, but the co-defendant told her to wait for Castillo. *Id.* at 369. Castillo jumped in the car, but realized he lost his phone, so he got out to find it. *Id.* The witness drove away without Castillo, but they eventually rendezvoused at his house. *Id.* Castillo confessed that he shot the victim and asked the witness to get rid of his phone and shoes. *Id.* She did so but turned herself into police the following morning. *Id.* at 369–70. The witness pled guilty to tampering with evidence in connection with the murder and testified in Castillo's trial. *Id.* at 370–74. Castillo was convicted of murder and complained on appeal that the trial court erroneously instructed the jury to decide whether the witness was an accomplice as a matter of fact, rather than treating her as an accomplice as a matter of law. *Id.* at 368, 373.

In affirming the conviction, we held that the witness was not an accomplice as a matter of law. *Id.* at 368, 373–74. Castillo claimed that the witness acted with the requisite culpable mental state because she refused to drive her own car, knew the co-defendant brought a gun, and backed into a parking space at the apartment complex for a quicker getaway. *Id.* at 373–74. The witness, on the other hand, testified that she had no knowledge of Castillo's plan to kill the victim and did not drive her car because Castillo never gave her gas money. *Id.* at 374. We concluded that the witness was not an accomplice as a matter of law, but the conflicting evidence as to her knowledge and intent warranted an instruction permitting the jury to decide whether she was an accomplice as a matter of fact. *Id.* We likewise upheld the jury's implicit finding that the witness was not an accomplice. *Id.* at 376. In doing so, we explained that "[w]hen a witness provides assistance to the defendant after the defendant commits a crime, the witness is not an accomplice." *Id.* at 375 (citing *Easter v. State*, 536 S.W.2d 223, 228–29 (Tex. Crim. App. 1976)). That is because an "accessory after the fact" is not subject to indictment for the same offense committed by the principal, but instead commits a separate offense, such as hindering apprehension or prosecution. *Id.*

The Court of Criminal Appeals has reiterated the well-established rule that mere presence at the scene of the crime does not render a witness an accomplice. *Druery*, 225 S.W.3d at 498 (citing *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986)). Moreover, a witness is not an accomplice merely because he knew of the crime and failed to disclose it or even concealed it. *Id.*; *Griffin v. State*, 571 S.W.3d 404, 413 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). Instead, sufficient evidence must exist to connect the witness to the criminal offense as a "blameworthy participant." *Cocke*, 201 S.W.3d at 748; *Griffin*, 571 S.W.3d at 413.

7

Here, the trial court did not err by failing to submit an accomplice-witness instruction for Valles's uncontradicted testimony. Valles told the jury that he "just took off" after the shooting because he "was scared," and "didn't know what to do." Valles drove to his friend Eva Foster's house because it was "the only place [he] knew where to go at the time," and "had to keep the gun away" from Appellant. Valles testified that "if [Appellant] still had that gun, more people would've got shot." When Valles got to Foster's, he threw the gun under a couch when Appellant was not paying attention.

From Foster's house, Valles drove to see his ex-girlfriend, then his daughter, in hopes of "stalling" until police caught them. Valles explained that he tried convincing Appellant to turn himself in, but Appellant accused Valles of being "against him." At Appellant's direction, Valles drove eastbound on Interstate 20 until police stopped him. Appellant told Valles to "keep going," but Valles refused to evade police, and pulled over. Valles testified that he had "never been so happy to see the police in [his] life," and "gave them everything they needed."

Additionally, as the State points out, Appellant's theory at trial was not that Valles was complicit in the offense committed. Rather, Appellant argued that Valles was the shooter and sole perpetrator. Valles was not charged with murder or a lesser-included thereof, nor does "the evidence *clearly* show[] that [he] could have been so charged." *See Zamora*, 411 S.W.3d at 510 (emphasis added).

Finally, there was no evidence presented that Valles acted with the requisite intent to commit murder. Even during lengthy cross-examination, he maintained that he stayed with Appellant because he feared for his life and his family's life, and he did not want Appellant to hurt anyone else. The evidence showed only that Valles aided Appellant after he shot Garcia by driving him away from the crime scene and out of town, and Valles was convicted of hindering apprehension or prosecution for

8

his actions. *See* PENAL § 38.05. He was, therefore, neither an accomplice as a matter of law, nor an accomplice as a matter of fact. *See id.*; *Castillo*, 517 S.W.3d at 373–75. We find no error in the trial court's omission of an accomplice-witness instruction.

*Harm*

Even if the trial court had erred by failing to instruct the jury to determine whether Valles was an accomplice as a matter of fact, the record shows that Appellant suffered no egregious harm here.

Not all charge errors require reversal, and the harm analysis depends on whether the defendant timely objected to the alleged error. *See Campbell*, 664 S.W.3d at 245; *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Where there was a timely objection, an appellant must show he suffered "some harm." *Cyr*, 665 S.W.3d at 556 (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *see* CRIM. PROC. art. 36.19 (West 2006). If the defendant did not make a timely objection, an appellate court may only reverse upon a finding of "egregious harm." *Alcoser*, 663 S.W.3d at 165. An erroneous charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* Appellant did not request an accomplice-witness instruction for Valles, so we review any alleged error in this case for egregious harm.

Egregious harm is a difficult standard to meet. It must be based on "actual harm rather than theoretical harm," and the analysis is a fact-specific one. *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)); *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Ordinarily, harm is assessed in light of: (1) the entire charge; (2) the state of the evidence, including the contested issues and weight of the probative evidence; (3) counsel's arguments; and (4) any

other relevant information revealed by the record as a whole. *Alcoser*, 663 S.W.3d at 165 (citing *Almanza*, 686 S.W.2d at 171). The failure to submit an accomplice-witness instruction assessed under the egregious harm standard "is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Ambrose*, 487 S.W.3d at 598 (quoting *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)); *see also Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012); *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).

The appropriate focus of a harm analysis is to examine the non-accomplice evidence for corroboration "tending to connect" Appellant to the commission of the offense. *See Ambrose*, 487 S.W.3d at 598 (quoting *Casanova*, 383 S.W.3d at 539). Here, we find that there was sufficient non-accomplice evidence to support the jury's verdict.

Monica was standing next to Garcia when he was shot and unequivocally identified Appellant as the shooter. Lopez told the jury that Deltoro called her and, before he hung up said, referring to Appellant, "Zach shot. Zach shot." Lopez also saw Appellant earlier that afternoon playing with a gun identical to the murder weapon. Appellant was described as "tripping" as the night progressed and hit Deltoro prior to the shooting. The non-accomplice evidence showed that Appellant was the passenger in Valles's vehicle when Garcia was shot, and that he was the only one holding a gun at that time.

Further, the arresting officers testified that Appellant made incriminating statements during their investigation. Appellant told Chief Deputy Josh Nichols with the Eastland County Sheriff's Office, "Man, you know. You know what's going on. I smoked him." As Chief Deputy Nichols placed Appellant in the patrol car, Appellant said, "I'm good with it. Let's rock and roll baby. I love a show."

10

Appellant told Sergeant Tammie Stubblefield with the Eastland Police Department, "he knew what this was about." The jury also heard Appellant say, "I done did that" on Sergeant Stubblefield's body camera footage.

The corroborating evidence under Article 38.14 "need not be sufficient, standing alone, to prove beyond a reasonable doubt that a defendant committed the offense." *Ambrose*, 487 S.W.3d at 598 (quoting *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007)). "There need be only some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the offense." *Id.* (quoting *Joubert*, 235 S.W.3d at 731). The testimony of Monica identifying Appellant as the shooter, Lopez's testimony that Appellant had a gun identical to the murder weapon earlier that day, and Appellant's statements to police corroborate Valles's testimony that Appellant shot Garcia. Because there was strong corroborative evidence tending to connect Appellant to the murder of Garcia, the totality of the record fails to show that he was egregiously harmed by the omission of the accomplice-witness instruction. *See id.* at 599. Therefore, even if Appellant were entitled to an accomplice-witness instruction, he was not egregiously harmed by the lack thereof. Appellant's first issue is overruled.

*Ineffective Assistance of Counsel*

In Appellant's second issue, he contends that his trial counsel was ineffective for failing to request an accomplice-witness instruction. For the aforementioned reasons, even had his trial counsel requested same, Appellant was not entitled to an accomplice-witness instruction. We thus find trial counsel's performance was not deficient. Moreover, even if Appellant were entitled to the instruction, Appellant has not established that he was prejudiced by trial counsel's performance.

In reviewing a complaint of ineffective assistance of counsel, we determine whether counsel's conduct "so undermined the proper functioning of the adversarial

11

process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). Ineffective-assistance-of-counsel claims involve a two-pronged test: (1) whether counsel's performance was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's errors. *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland*, 466 U.S. at 687).

To establish that counsel's actions were deficient, an appellant must show, by a preponderance of the evidence, that counsel's performance fell below an objective standard of reasonableness. *Id.* There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, i.e., "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). To overcome this deferential presumption, an allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021).

To demonstrate deficient performance based on trial counsel's failure to request a jury instruction, an appellant must show that he was entitled to such an instruction. *Hart*, 667 S.W.3d at 782. "[I]t is difficult to envision that any competent attorney would reasonably forego an accomplice-witness jury instruction as a matter of strategy based on his theory of the case." *Zamora*, 411 S.W.3d at 514. Because the accomplice-witness rule cannot be reasonably categorized as a defensive issue that a defense attorney might forego as a matter of strategy, the failure to request it *when a defendant is entitled thereto* constitutes deficient performance. *See id.* at 513–14.

As we have said, Valles was not an accomplice, so Appellant's counsel's failure to request an accomplice-witness instruction cannot constitute deficient performance. However, even if Appellant were entitled to the instruction, he has not shown he was prejudiced by its omission.

The prejudice prong of the *Strickland* test is generally met by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). As previously set forth, there was a significant amount of non-accomplice evidence in the record—the testimony of Monica, Lopez, Chief Deputy Nichols, and Sergeant Stubblefield—that tended to connect Appellant to the murder, and the record reveals no rational basis on which the jury could have doubted or disregarded that evidence. That non-accomplice evidence, if believed, established that Appellant: (1) was the closest in proximity to Garcia besides Monica when Garcia was shot; (2) had been handling a gun identical to the murder weapon earlier that day; (3) was asked to leave Garcia's house due to his aggressive and violent behavior; (4) was the only person with a gun in his hand when Garcia was shot; (5) told police he knew why they stopped him; and (6) said "I smoked him," among other incriminating statements, after he was arrested. Given the quantity and quality of the non-accomplice evidence that tended to connect Appellant to the offense committed, we discern no reasonable probability that, but for trial counsel's failure to request an accomplice-witness instruction, the result of the guilt stage would have been different. *See Davis*, 278 S.W.3d at 352–53. Appellant's second issue is overruled.

## This Court's Ruling

The trial court did not err in omitting the accomplice-witness instruction from its charge. As a result, Appellant did not suffer egregious harm by the omission,

counsel's performance was not deficient for his failure to request the instruction, and Appellant has not shown that he suffered prejudice because of counsel's alleged error. We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

January 4, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.